## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RS FIT NW LLC,<br><br>        Reorganized Debtor. | Chapter 11<br><br>Case No. 20-11568 (KBO)<br><br>**Objection Deadline:**<br>**October 19, 2021 at 4:00 p.m. (ET)**<br><br>**Hearing Date:**<br>**October 26, 2021 at 10:00 a.m. (ET)** |

## OPENING BRIEF IN SUPPORT OF MOTION OF CLASS CLAIMANT FOR CLASS CERTIFICATION OR, IN THE ALTERNATIVE, FOR EXTENSION OF BAR DATE FOR MEMBERSHIP CLAIMS

Dated: October 12, 2021
Wilmington, Delaware

**COOCH AND TAYLOR, P.A**

*/s/ R. Grant Dick IV*
R. Grant Dick IV (Del. No. 5123)
Dean R. Roland (Del. No. 6459)
The Nemours Building
1007 N. Orange St., Suite 1120
Wilmington, DE 19801
Telephone: 302-984-3867
Facsimile:  302-984-3939
Email: gdick@coochtaylor.com

– and –

**BURSOR & FISHER, P.A.**
Yeremey O. Krivoshey
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ykrivoshey@bursor.com

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION AND BACKGROUND ............................................................ 1

    A.    The *California Action* ...................................................... 1

    B.    Menacho's Class Proof of Claim and Participation in Bankruptcy ................. 6

JURISDICTION AND VENUE ...................................................................... 9

LEGAL STANDARD ................................................................................ 9

ARGUMENT: THE COURT SHOULD GRANT CLASS CERTIFICATION ..................... 10

    C.    The Court Should Exercise Discretion To Apply Rule 23 ............................ 10

        1.    The First *Musicland* Factor Holds No Weight In This Case Because The Class Claims Arose Out Of Same Predicate Events That Lead To Debtors' Bankruptcy Filing ................................................... 10

        2.    The Second *Musicland* Factor Holds No Weight Because Menacho's Class Proof of Claim Tolled The Bar Date For Membership Agreement Claimants ................................................... 12

        3.    The Third *Musicland* Factor Strongly Supports Application of Rule 23 Because Class Certification Will Aid The Administration Of, And Will Not Prejudice, The Estate ........................................... 15

    D.    The Requirements Of Fed. R. Civ. P. 23 Are Satisfied ................................ 20

        1.    Rule 23(a)(1) Numerosity Requirement Is Satisfied ......................... 20

        2.    Rule 23(a)(2) Commonality Requirement Is Satisfied ....................... 20

        3.    Rule 23(a)(3) Typicality Requirement Is Satisfied ........................... 21

        4.    Rule 23(a)(4) Adequacy Requirement Is Satisfied ........................... 22

        5.    Rule 23(b)(3) Predominancy Requirement Is Satisfied ...................... 23

        6.    Rule 23(b)(3) Superiority Requirement Is Satisfied .......................... 24

ARGUMENT: IF THE COURT DECLINES TO CERTIFY THE CLASS, IT SHOULD SET NEW BAR DATE FOR MEMBERSHIP CLAIMS ...................................... 25

CONCLUSION ...................................................................................... 26

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ...................................................................................... 12

*Gentry v. Siegel*,
    668 F.3d 83 (4th Cir.2012) ........................................................................ 12, 13

*Gillis v. Respond Power, LLC*,
    677 Fed. Appx. 752 (3d Cir. 2017) .................................................................. 23

*In re Chaparral Energy, Inc.*,
    571 B.R. 642 (Bankr. D. Del. 2017) ......................................................... passim

*In re Charter Co.*,
    876 F.2d 866 (11th Cir. 1989) ......................................................................... 13

*In re Kaiser Grp. Intn'l, Inc.*,
    278 B.R. 58 (Bankr. D. Del. 2002) ............................................................ passim

*In re MF Global Inc.*,
    512 B.R. 757 (Bankr. S.D.N.Y. 2014) ....................................................... passim

*In re Musicland Holding Corp.*,
    362 B.R 644, (Bankr. S.D.N.Y. 2007) .................................................. 10, 12, 13

*In re Pac. Sunwear of Ca., Inc.*,
    2016 WL 3564484 (Bankr. D. Del. June 22, 2016) ........................... 9, 18, 24, 25

*In re United Cos. Fin. Corp.*,
    276 B.R. 368 (Bankr. D. Del. 2002) ................................................................. 24

*Kolbe v. BAC Home Loans Serv., LP*,
    738 F.3d 432 (1st Cir. 2013) ............................................................................ 23

*Schuman v. The Connaught Grp., Ltd.*,
    491 B.R. 88 (Bankr. S.D.N.Y. 2013) ......................................................... passim

*Teta v. Chow (In re TWL Corp.)*,
    712 F.3d 886 (5th Cir.2013) ............................................................................ 12

## STATUTES

28 U.S.C. § 157 ...................................................................................................... 9

28 U.S.C. § 1334 .................................................................................................... 9

28 U.S.C. § 1408 .................................................................................................... 9

28 U.S.C. § 1409 .................................................................................................... 9

Bus. & Prof. Code § 17200 ................................................................................... 6

Bus. & Prof. Code § 17500 ................................................................................... 6

**RULES**

Fed. R. Bankr. P. 9014 ........................................................................................... 1

Fed. R. Civ. P. 23 .......................................................................................... passim

Fed. R. Civ. P. 23(a) ..................................................................................... passim

Fed. R. Civ. P. 23(b) ............................................................................... 10, 20, 23

Michael Menacho ("Class Claimant" or "Menacho"), Claim No. 24450 (the "Class Proof of Claim"), by and through his undersigned counsel, hereby moves for an order certifying a "Class" defined as:

> **All persons with a Membership Agreement Claim who were charged and paid monthly membership fees to 24 Hour Fitness for a period of time when Debtor's gyms were closed during the COVID-19 pandemic in March and April 2020.**

Mr. Menacho timely filed a Class Proof of Claim and also was a named putative class representative plaintiff in *Labib et al. v. 24 Hour Fitness USA, Inc*., Case No. 3:20-cv-02134 (N.D. Cal.) (the "*California Action*"), a case Mr. Menacho filed pre-petition. Menacho makes this motion pursuant to Fed. R. Civ. P. 23 and Rules 7023 and 9014 of the Federal Rules of Bankruptcy Procedure. Should the Court decline to grant class certification, Menacho moves for the Court to establish a new bar date for Membership Agreement Claimants because Menacho's filing of the Class Proof of Claim tolled the deadline under the applicable caselaw discussed herein for holders of Membership Agreement Claims to submit claims until after the Court rules on the present motion. Mr. Menacho's Claim, which contains the Class Proof of Claim and the June 3, 2020 Amended Class Action Complaint in the *California Action*, is attached as Exhibit 1 to the Declaration of Yeremey Krivoshey filed herewith.

## INTRODUCTION AND BACKGROUND

### A.    The *California Action*

1.      The events that led to Claimant's complaint and allegations in the *California Action* and the Class Proof of Claim are the same events that led to Debtors' filing of the bankruptcy itself. Specifically, as alleged in the *California Action*, COVID-19 governmental mandates and restrictions forced Debtors to close 100 percent of their gyms nationwide on March 16, 2020. *California Action* Am. Compl. ¶¶ 1-4. In breach of their membership

contracts with their customers, Debtors made the unconscionable decision to continue charging their customers monthly memberships over the next month, until April 15, 2020, despite 100 percent of their gyms being closed during that period.  *Id*. ¶¶ 4-11.  To make matters worse, Debtors simultaneously made it impossible to freeze, pause, or cancel the memberships during this period, meaning that customers could not avoid these payments even if they wanted.  *See id*. ¶¶ 10-11.

2.      In the *California Action*, and in public statements, Debtors attempted to justify their conduct by claiming that their membership contracts permitted them to keep charging customers' credit and debit cards even as their gyms were closed nationwide.  *Id*. ¶ 5.  The membership contracts do no such thing.

3.      In relevant part, Debtors' contracts with their customers entitle customers "to use 24 Hour's premises, facilities, equipment and services."  *See* Exhibits 1 and 2 to the *California Action* Am. Compl. at 2(a).  Customers are also "entitled to use … those clubs covered by [their] membership." *Id*. at 2(b).  The contracts state that customers' "membership with 24 Hour shall include access to the facility of facilities … including the cardiovascular, strength and conditioning equipment at those facilities." *Id*. at 4(a).  Debtors were in breach of those provisions because their customers did not have access to Debtors' gyms' premises, facilities, equipment, or services.

4.      Debtors' contracts also contain a "Temporary Closures" provision, which Debtors have, even during the pendency of the *California Action*, attempted to use as justification for continuing to charge their customers while their gyms were, and (many) still remain, closed.  The Temporary Closures provision states:

> **4(c). Temporary Closures:** 24 Hour regularly closes its facilities, or portions of its facilities, on a temporary basis for maintenance, selected

holidays, and other hours based on municipal requirements or other business reasons and such temporary closures will have no effect on this Agreement so long as such temporary closures are reasonable. **If your Club of Enrollment is forced to close for 30 days or less by events or occurrences beyond 24 Hour's control, such as, by way of example, natural disasters, riots or unrest, or action by any lawful authority (Unforeseen Events), you will not be entitled to a refund, dues credit or to terminate your membership. However, if Unforeseen Events force your Club of Enrollment to close for more than 30 consecutive days, then 24 Hour will extend your membership, without dues, for the same period your Club of Enrollment was closed or completely unavailable, but only if there is not another club to which you have access within 10 miles of your Club of Enrollment.** If 24 Hour closes your Club of Enrollment for more than 10 consecutive days for any reason not caused by Unforeseen Events, 24 Hour will extend the term of your membership, without dues, for any days beyond 10, but only if there is not another club to which you have access within 10 miles of your Club of Enrollment. Your obligations if 24 Hour permanently closes or moves your Club of Enrollment are explained in Section 6. If your Club of Enrollment closes because it is sold, 24 Hour may assign you membership to the new owner.

*See id.* at 4(c) (emphasis added.) As set out in the Temporary Closures provision, customers are not entitled to a refund only where (1) Debtors' gyms were closed for *less than* 30 days, (2) if there is another club to which customers have access to that is within 10 miles of their Club of Enrollment. As discussed above, Debtors' gyms were closed for *more than* 30 days, as virtually all of their gyms remained closed for many months – *and* about one hundred thirty (130) location*s closed permanently*.[1] Further, not one of Debtors' customers nationwide had access to a club that was within 10 miles of their Club of Enrollment during the closures, as 100 percent of Debtors' gyms were closed for more than 30 days. If neither of those conditions are satisfied, Debtors are required to extend its customers' membership "without dues." Nothing in the contract permitted Debtors to continue charging their customers full price while their gyms were closed for more than 30 days.

---

[1] Mary Hanbury, Business Insider, *24 Hour Fitness Files for Bankruptcyu and Closes over 130 Gym Locations Across the US*, https://www.businessinsider.com/24-hour-fitness-files-for-bankruptcy-closes-over-130-gyms-2020-6 (last accessed October 6, 2021).

5.     Debtors' decision to keep inappropriately charging customers' credit and debit accounts was exacerbated by the fact that Debtors made it virtually impossible to freeze, pause, or cancel the memberships during the initial months of the pandemic.  Notably, Debtors' contracts with their consumers permit consumers to "**receive a refund of unused prepaid dues** or unused fitness services" if "24 Hour eliminates or substantially reduces the scope of the facilities described in [the] Agreement." *See* Exhibits 1 and 2 at 6(b)(5), 6(d) (emphasis added.) Debtors' contracts state that customers have three methods for cancelling the contracts: "1) by mailing a written notice to 24 Hour Fitness, P.O. Box 787, Carlsbad, CA 92018, 2) visiting or calling any 24 Hour Fitness club, or 3) calling our Member Services department at 1-866-308-8179." *See id*. at 6(d). Critically, Debtors' contracts mandate that they refund any unused portion of dues paid or charged upon cancellation:

> 24 Hour will pro-rate and refund any dues (including the day 24 Hour receives your termination notice) for unused time that you have already paid for the 30-day monthly billing cycle. For example if you cancel on July 15 and you paid your monthly dues on July 10, you will be eligible for a pro-rated refund of 26 days which is 25 days of unused time plus the day 24 Hour received your termination notice. Your club access and membership privileges will end after 30 days from July 15. It may take up to 30 days to receive your refund in order to allow 24 Hour to confirm receipt of your payment for the monthly billing cycle.

*Id*.  The contracts also permit customers to "freeze" their accounts for up to 12 months so long as their accounts are in good standing and all initiation fees were paid, whereby "[n]o further dues will be collected during [the] approved freeze and [customers'] right to access 24 Hour facilities during the freeze will be suspended." *See* Exhibits 1 and 2 to the *California Action* Am. Complaint (Membership Policies).  However, Debtors eliminated customers' option to cancel or freeze their memberships by visiting or calling their clubs or calling their Member Services department.  And, to make matters worse, despite effectively eliminating customers'

ability to cancel or freeze payments, Debtors continued charging their customers dues while their gyms were closed, and to this day refuse to issue refunds due under the contracts.

6.    Both pre-petition and as part of this bankruptcy, Debtors have instead chosen to "rob Peter to pay Paul."  Debtors charged their customers over $100 million in membership fees while their clubs were closed, and will now use that money to pay off secured creditors through the bankruptcy process while leaving their customers with virtually nothing, or $25 gift cards at most.

7.    In an attempt to soothe Debtors' customers' outrage over being billed while 100 percent of gyms were closed, Debtors announced on April 1, 2020 that they would suspend membership billings effective April 16, 2020 and stated that customers that were billed between March 17, 2020 through April 15, 2020 would receive additional days of access equal to the number of days paid for while the clubs were closed.  *California Action* Am. Coml. ¶ 8. Critically, Debtors stated that the extension of days would "apply at the end of the membership," and not when the clubs actually opened up.  *Id*.  This "offer" was, however, completely illusory for the vast majority of their customers, including *all* Membership Agreement Claimants (whose contracts, by definition, were "terminated pursuant to [their] terms").  *See First Amended Joint Chapter 11 Plan of Reorganization of 24 Hour Fitness Worldwide, Inc. and Its Affiliated Debtors* (the "Plan"), p. 40 [D.I. 1487.][2]  For instance, Debtors have since announced that around one hundred thirty (130) of their clubs would remain closed permanently, meaning that customers of those clubs would receive nothing.  Further,

---

[2] On March 16, 2021, the Court entered its Final Decree (I) Closing the Affiliate Cases and (II) Granting Related Relief. Subsequent to the Final Decree, further pleadings and other papers were to be filed in and all further docket entries shall be made in Case No. 20-11568 (KBO). Docket entries filed subsequent to the Final Decree shall hereinafter be styled [P.C. D.I. _____]. Prior citations to the docket shall be [D.I. ____.]

when customers sign up for Debtors' gym memberships, Debtors force their customers to pay (1) an annual non-refundable fee, (2) first-month's dues, and (3) last month's dues. *See* Exhibits 1 and 2 at 3(a) to *California Action* Am. Compl.  Thus, Debtors' offer of providing "additional days of access" at the end of the memberships effectively guaranteed that customers would not benefit whatsoever from these "extra" days.  Customers are already forced to pay for the last month of dues when they sign up.  Thus, the "extra" days would only be given to customers that no longer wished to use Debtors' gyms, making the offer illusory.

8.      For these reasons, and the additional grounds discussed in the California Action, Menacho sought to represent Debtors' customers nationwide that had paid or were charged fees for a period of time when Debtors' gyms were closed for Debtors' violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, money had and received, conversion, breach of contract, and violation of California's Health Studio Services Contract Law, Civil Code §§ 1812.80, *et seq.*  In this bankruptcy, Menacho seeks to represent a narrower class limited to members that have Membership Agreement Claims under the Plan – *i.e.*, those members whose memberships were "terminated pursuant to [their] terms."

**B.      Menacho's Class Proof of Claim and Participation in Bankruptcy**

9.      On or about June 19, 2020, Menacho submitted a Questionnaire for Official Committee of Unsecured Creditors (the "Committee"), which Menacho amended on June 23, 2021, seeking to serve on the Committee.  Krivoshey Decl., Exs. 3-5.  Thereafter, counsel for Menacho participated in multiple conversations with Linda J. Casey, one of the trial attorneys assigned to this bankruptcy for the United States Trustee, concerning Menacho's desire to serve on the Committee and actively participate in the bankruptcy.  *Id.* ¶ 4.  On June 25, 2020,

the U.S. Trustee informed counsel for Menacho that a 7 person committee was formed, and that Mr. Menacho was not selected to serve.  *Id.* ¶ 6, Ex. 5.  Notably, none of the other members of the committee members purported to represent membership claimants in the bankruptcy.  *See id*.

10.     Menacho timely submitted his Claim, including a Class Proof of Claim, on October 1, 2020.  The Claim asserted that the amount of the claim was $120 million, the estimated damages of the Class as asserted in the *California Action*.

11.     On August 27, 2021, the Reorganized Debtor filed the Reorganized Company's Twenty-First (Substantive) Omnibus Objection to Certain No Liability Claims (the "Twenty-First Omnibus Objection") [P.C. D.I. 251.]  Menacho timely filed his *Response of Michael Menacho on Behalf of the Putative Class of Members of 24 Hour Fitness to Debtors' Twenty-First Substantive Omnibus Objection to Certain No Liability Claims* (the "Menacho Claims Response") [P.C. D.I. 260.] The Twenty-First Omnibus Objection and the Menacho Claim Response therefore constitute a contested matter.

12.     To be clear, Menacho filed a "Membership Agreement Claim" as defined in the Plan.  A "Membership Agreement Claim" is defined as "a Claim that arises from a Membership Agreement as of the Petition Date." Plan, at 10 [D.I. 1487.]

13.     "Membership Agreements" is defined as "all agreements between the Debtors and Members that grant Members access to the Debtors' fitness clubs and all ancillary agreements related thereto."  *Id*.  A "Member" is defined as "a non-Debtor party to a Membership Agreement."  As discussed in the Class Proof of Claim and the California Action, Menacho and the Class claim arise out of the Debtors' Membership Agreements and originated pre-petition, and are, accordingly, Membership Agreement Claims.

14.     The Plan also states that "Each Membership Agreement to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be assumed by the Reorganized Company on behalf of the applicable Debtor effective as of the Effective Dates *unless such Membership Agreement was terminated pursuant to its terms*." *Id.* at 40 (emphasis added).  As discussed above, Debtors closed about one hundred thirty (130) clubs permanently, which effected a termination of Membership Agreements "pursuant to [their] terms," meaning that all Class members that belonged to such a closed gym location are within Menacho's Class Proof of Claim.   Menacho's membership was also "terminated pursuant to its terms" on June 2, 2020, pre-petition.  *See* Krivoshey Decl., Ex. 6.   Like Menacho, who cancelled his membership when Debtors closed their gyms nationwide, all other 24 Hour Fitness customers that cancelled their memberships have valid Membership Agreement Claims within the scope of the Class Proof of Claim.

15.     The Plan provides that holders of Allowed Membership Agreement Claims in an amount less than $250.00 will receive a $25.00 Gift Card.  Menacho, on behalf of himself and the Class, seeks precisely that in this bankruptcy – for Debtors to provide *each* Class member with a Membership Agreement Claim a $25.00 Gift Card.  Debtors, on the other hand, intend to provide $25 Gift Cards solely to Class members that actively filed a claim in bankruptcy by the Bar Date – effectively ignoring the Class Proof of Claim and tolling rules, as discussed in more detail below.  The case law is clear: the filing of a Class Proof of Claim tolls the deadline for class members to file claims.   That Debtors chose to proceed to confirmation of the Plan prior to objecting to or addressing the Class Proof of Claim does not extinguish the Claim, or Class members' rights to compensation under the Plan.  Debtors' strategic maneuvering to yet-again leave the vast majority of its customers with nothing cannot

trump Class members' due process rights, and should not deprive them of benefits under the Plan that Debtors proposed and the Court approved. Class certification is required to avoid a grave miscarriage of justice.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2)(A). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

17.    "The vast majority of courts conclude that class proofs of claim are permissible in a bankruptcy proceeding." *In re Kaiser Grp. Intn'l, Inc*., 278 B.R. 58, 62 (Bankr. D. Del. 2002). That said, whether to permit a class action to proceed within bankruptcy is a matter of discretion. *In re Pac. Sunwear of Ca., Inc*., 2016 WL 3564484, at *5 (Bankr. D. Del. June 22, 2016). "In exercising that discretion, a two-step analysis is performed." *Id*. First, the Court must decide whether to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process. *Id*. Second, the Court must determine whether the requirements of Fed. R. Civ. P. 23 have been satisfied. *Id. See also In re Chaparral Energy, Inc*., 571 B.R. 642, 646 (Bankr. D. Del. 2017) (discussing standard).

18.    "[C]ourts have developed a three-factor framework to help guide the court's discretion in determining if Bankruptcy Rule 7023 should be extended to the claim administration process." *Id*. "Those factors are: (1) whether the class was certified pre-petition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate." *Id*. These factors are often called the "*Musicland* factors," referring to factors discussed by Judge

Bernstein in *In re Musicland Holding Corp*., 362 B.R 644, (Bankr. S.D.N.Y. 2007).  "No one factor is dispositive; a factor may take on more or less importance in any given case."  *In re Chaparral Energy, Inc*., 571 B.R. at 646.

### ARGUMENT: THE COURT SHOULD GRANT CLASS CERTIFICATION

19.     As discussed herein, the Court should exercise its discretion to apply Fed. R. Civ. P. 23 to this proceeding because the *Musicland* factors are satisfied.  It should then certify the Class because each of the requirements of Rule 23(a) and (b)(3) are satisfied.

**C.     The Court Should Exercise Discretion To Apply Rule 23**

**1.     The First *Musicland* Factor Holds No Weight In This Case Because The Class Claims Arose Out Of Same Predicate Events That Lead To Debtors' Bankruptcy Filing**

20.     The first of the *Musicland* factors, whether the class was certified pre-petition, holds little to no weight in most cases, and the same is true here.  *See, e.g., In re Chaparral Energy, Inc*., 571 B.R. at 646 (stating that "the Court would not be alone in exercising its discretion to apply Bankruptcy Rule 7023" where the putative class was not certified prepetition, and citing cases).  Indeed, "[t]o hold otherwise would effectively prohibit the use of class actions in bankruptcy altogether unless the class action had proceeded to a stage where a class representative had been appointed pre-petition."  *In re Kaiser Grp. Intn'l, Inc*., 278 B.R. at 63 (quotations omitted).  Judges in this District "do not believe that the timing of the bankruptcy filing should be determinative of whether a class proof of claim should be permitted." *Id*.

21.     Where, as here, the Class claims arose "in part, for the same reasons that precipitated the bankruptcy – the issue of prepetition certification loses its relevance, since there will seldom be time to file a class action complaint and certify a class before the petition date." *In re MF Global Inc*., 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014); *see also Schuman v.*

*The Connaught Grp., Ltd.*, 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013) ("Returning to the specific bankruptcy considerations, the class was not certified pre-petition but this is not surprising or significant … In essence, this is a class created by the bankruptcy itself.  Hence, this factor cannot be entitled to any weight because it would foreclose WARN Act classes in virtually all bankruptcy cases.").  Here, it is undisputed that the COVID-19 pandemic precipitated and was the major factor in putative class members' losses and the bankruptcy itself.  Debtors cite the COVID-19 pandemic as the primary, and likely but-for, reason for having to file for bankruptcy.  *See Disclosure Statement for First Amended Joint Chapter 11 Plan of Reorganization of 24 Hour Fitness Worldwide, Inc. and Its Debtor Affiliates* (the "Disclosure Statement"), p. 21 [D.I. 1246] (listing the "COVID-19 Pandemic" as the primary "Event[] Leading to Commencement of the Chapter 11 Cases").  As Debtors state in their Disclosure Statement, "On March 16, 2020, the Debtors closed all their club locations in response to the recommendation of the Centers for Diseases Control and Prevention (the 'CDC') as well as various state and local laws, regulations, and/or government orders."  *Id*.  Debtors state that as of March 16, 2020, "substantially all of the Debtors' operations were hibernated."  *Id*.  However, Debtors admit that despite stopping all operations and closing their clubs nationwide, Debtors did not suspend its "monthly membership revenues" until "on or about April 15, 2020, notwithstanding the temporary closure provisions set forth in the Debtors' various membership agreements."  *Id*.  Menacho, like millions of Debtors' other members, was outraged that Debtors chose to pilfer its members' credit card and debit cards while shutting down all operations, and promptly filed (pre-petition) the *California Action*.[3]

---

[3] The *Labib* action was initially filed on March 27, 2020, with Brenda Labib as the sole class representative.  *See Labib v. 24 Hour Fitness USA, Inc*., Case No. 4:20-cv-02134-KAW, Dkt. No. 1 (N.D. Cal. Mar. 27, 2020).  Mr. Menacho was added as a class representative on June 3, 2020.  *See id*., Dkt. No. 21.

22.    Debtors filed for Chapter 11 bankruptcy just two to three months after the events that caused Menacho and putative class members' loss.  Those same events –Debtors' shutting down of all of their clubs nationwide – lead to the bankruptcy itself.  As in *In re MF Global, Inc.*, "the issue of prepetition certification loses its relevance," since it was impossible to obtain pre-petition class certification because the events that lead to the claims and the bankruptcy were one and the same.  *In re MF Global Inc.*, 512 B.R. at 763.

### 2.    The Second *Musicland* Factor Holds No Weight Because Menacho's Class Proof of Claim Tolled The Bar Date For Membership Agreement Claimants

23.    As to the second factor concerning notice of the bar date, in *Musicland*, Judge Bernstein's primary concern was that "[a]llowing the class proof of claim would extend the bar date for those creditors who failed to timely claim to the prejudice of those creditors who did." *In re Musicland Holding Corp.*, 362 B.R. at 656.  *See also In re MF Global Inc.*, 512 B.R. at 764 ("It was largely this reasoning that led Judge Bernstein in *Musicland* to state that 'putative members of an uncertified class who received actual notice of the bar date but did not file timely claims are the least favored candidates for class treatment'").  As noted by District Judge Glenn, however, Judge Bernstein later changed his mind:

> But Judge Bernstein reached a different conclusion in [*In re Connaught Grp., Ltd.*, 491 B.R. 88 (Bankr. S.D.N.Y. 2013)], where he held that the same tolling rule that applies generally to class actions also applies in bankruptcy, tolling the bar date for members of the putative class. *Connaught*, 491 B.R. at 97.  Thus, "[i]f the [class] representative files a timely adversary proceeding or class proof of claim, and the Court denies a motion to certify the class, it should set a reasonable bar date to allow the members of the putative class to file individual claims." *Id.* (citing *Teta v. Chow (In re TWL Corp.),* 712 F.3d 886, 899 (5th Cir.2013); *Gentry v. Siegel,* 668 F.3d 83, 91 (4th Cir.2012)).  Furthermore, "class members are not required to show that they relied on the class adversary proceeding (or class proof of claim), and penalizing the class members for failing to file individual claims prior to the bar date would result in 'precisely the multiplicity of activity which Rule 230 was designed to avoid.'" *Id.* at 98 (quoting *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 551, 94

> S.Ct. 756, 38 L.Ed.2d 713 (1974)).  Judge Bernstein therefore held that the notice factor should be given minimal weight, since even if he denied the motion for class certification, he would fix a new bar date for individual claimants.  *Id.*  Judge Bernstein recognized that he had reached a different conclusion in *Musicland,* but explained that the putative class representatives in *Musicland* had not argued that the bar date was tolled or that a new bar date should be set.

*In re MF Global Inc*., 512 B.R. at 764.  "As with the issue of prepetition certification, therefore, the notice factor is of limited utility to the analysis here."  *Id*. at 765.  "Accordingly … the principal consideration must be the effect of the class certification on the administration of the estate."  *Id*.

24.     To be sure, as discussed in *In re MF Global Inc*., and by Judge Bernstein in *Connaught*, both Menacho's Class Proof of Claim and the present motion for class certification are timely.  Menacho timely filed the Class Proof of Claim prior to the bar date, and Debtors have not objected to it based on timeliness.  *See In re Kaiser Grp. Int'l, Inc*., 278 B.R. at 63-64 (rejecting argument that certification would have the effect of expanding the bar date for class members that did not file proofs of claims before the bar date, and noting that "the claims of all the members of the class are incorporated in the proof of claim that was timely filed").  As discussed by the Eleventh Circuit, Menacho's first opportunity to file the present motion arose on August 27, 2021 when Debtors filed its Twenty-First Omnibus Objection and Menacho filed the Menacho Claim Response.  *See In re Charter Co*., 876 F.2d 866, 874 (11th Cir. 1989) ("[A]bsent an adversary proceeding, the first opportunity a claimant has to move under Bankruptcy Rule 9014, to request application of Bankruptcy Rule 7023, occurs when an objection is made to a proof of claim."); [*See* P.C. D.I. 251 and 260.]  "Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter."  *Id*.  As in *Connaught*, Debtors, the Committee, and the United States Trustee here all knew about Menacho's Class Proof of Claim (including its size

of $120 million).  *See In re Connaught Grp. Ltd.*, 491 B.R. at 99 ("The Debtors and the Committee negotiated a plan, and the Debtors proposed a plan, with full knowledge of the unresolved class claim."); Krivoshey Decl. ¶ 4.[4]  And, as in *Connaught*, "[t]he Court confirmed the plan before the deadline for making the certification motion had even passed."  *Id*.  Debtors waited nearly *eleven* months after Menacho submitted his Class Proof of Claim, and *nine* months after the Plan was confirmed, to even raise an objection to Menacho's Class claim, while having full knowledge of the size and subject matter of the claim.  The Debtors also exhibited their awareness of Menacho's class litigation via a footnote in the Disclosure Statement, stating "To date, litigation has been commenced in connection with the Debtors' monthly billing on a post-March 16, 2020 basis, notwithstanding, among other things, the Debtors' rights under their various membership agreements. The Debtors reserve all rights, claims, and defenses in this regard."  Disclosure Statement, fn. 11 [D.I. 1246].

25.     They cannot now complaint that the Class claim should be disallowed based on timeliness or the passage of the bar date.  *See also In re MF Global Inc*., 512 B.R. at 765 (holding that even if the class claim is disallowed, the Court would be required to move the bar date anyways); *In re Chaparral Energy, Inc*., 571 B.R. at 649 (applying Bankruptcy Rule 7023 where "Debtors have not proceeded in a manner that comports with the alleged urgency in finalizing the administration of the estate").

---

[4] As explained above, counsel for Menacho was even interviewed by the U.S. Trustee to see if Mr. Menacho wanted to serve on the Committee.  Krivoshey Decl. ¶ 4.  Mr. Menacho filled out the provided questionnaire and applied to be on the Creditors' Committee, though he was not ultimately selected.  *Id*. ¶¶ 4-5

3.    **The Third *Musicland* Factor Strongly Supports Application of Rule 23 Because Class Certification Will Aid The Administration Of, And Will Not Prejudice, The Estate**

26.    The third *Musicland* factor strongly supports the application of Rule 23 here, as class certification will not adversely affect the administration of the estate.  If anything, class certification will *aid* the administration.  As in *Chaparral*, any arguments Debtors may have here that a) permitting the Class Claim would create uncertainty with respect to the recovery available for other unsecured creditors, b) that allowing class treatment will delay resolution and distribution of other claims, or c) that delayed resolution may impact Debtors' ability to solicit support for the plan are all moot, and untrue.  *In re Chaparral Energy, Inc*., 571 B.R. at 648-649.  "The Plan provided treatment as described above for the Putative Class and the treatment did not prove fatal to confirmation or consummation of the Plan."  *Id*. at 649.  "Further, any dilution of recoveries to other unsecured creditors is simply a function of the filing of a claim, not the filing of a class proof of claim."  *Id*.  The prosecution of the Class Claim will also not "unreasonably wast[e] estate assets through adding layers of procedural and factual complexity," or "threaten[] to halt or delay the Trustee's substantial progress in resolving general estate claims."  *In re MF Global Inc*., 512 B.R. at 765.  "In these circumstances, exercising discretion to apply Bankruptcy Rule 7023 will not adversely impact the estate."  *In re Chaparral Energy, Inc*., 571 B.R. at 649.

27.    The Plan provides that for each individual Membership Agreement Claim that is Allowed in an amount less than or equal to $250.00, the claimant will receive a $25.00 Gift Card.  For individual Membership Agreement Claims greater than $250.00, the claimant will receive a $50.00 Gift Card.  Allowing the Class Claim will not require changing the approved benefits or claim structure.  All it will do is actually provide each of the members of the proposed Class the precise benefits approved and confirmed by the Plan: either $25.00 or

$50.00, depending on the amount Debtors charged class members' credit and debit cards while their gyms were closed during COVID-19.  It is expected that virtually all, if not all, Class members will receive $25.00 under the Plan for the Class claims, as the average monthly membership costs between $30-50, and class members were only charged for a period of one to two months during the closure – meaning that individual claims will all be under the $250 threshold.  *See* Krivoshey Ex. 1, Am. Compl. ¶ 2.

28.     The Debtors' Disclosure Statement states that the Estimated Allowed Amount of all received Membership Agreement Claims was approximately $13,000,000.  [D.I. 1246 at 8]  The "Estimated Percentage Recovery," which would be provided in $25 gift cards, was estimated at 5-6 percent of $13 million, or $650,000 to $780,000.  *See id*.  But by this time, Debtors knew that the Class Proof of Claim valued at $120 million was timely filed, and consciously disregarded it when making their estimates.  Should the Court decline to certify the class and allow the $120 million Class claim, class members' real recovery of money siphoned from them by Debtors during the height of the pandemic would in fact be about *one half of one percent* under the Plan, and even then, the recovery would be in gift cards, not cash. That said, and though Menacho voted against the Plan, he is not now seeking to upset the applecart.  Rather, he seeks for absent class members to obtain precisely the relief confirmed under the Plan – *i.e*, $25 gift cards per class member.

29.     Because the Plan provides, and Menacho proposes, for class members to receive $25 gift cards, there is also no threat that processing the Class claim would "jeopardize the consummation of the plan."  *See In re Connaught Grp., Ltd*., 491 B.R. at 99 ("[T]here are sufficient funds to pay the claims if they are allowed, and the[ir] allowance will not jeopardize the consummation of the plan.").  The payment of gift cards will not diminish payments

anticipated under the Plan to 1) secured creditors, who are to be paid in cash or have their claims reinstated in full, 2) prepetition credit facility claimants, who are to be paid in equity interests, or 3) other general unsecured claimants, who are to be paid in cash or Warrants (depending on the size of the claim).  *See* Disclosure Statement, [D.I. 1246, at 6-9.]  And even if there were some nominal diminishment to other unsecured creditors, "any dilution of recoveries to other unsecured creditors is simply a function of the filing of the claim, not the filing of a class proof of claim."  *In re Chaparral Energy, Inc*., 571 B.R. at 649.  Further, the nature of gift cards is that they are often not used, or that class members receiving them will end up spending *additional* money on Debtors' products as a result of receiving the $25 gift cards (such as to buy a product valued at $50).  Notably, Debtors' prior filings suggest that maintenance of its pre-petition "Gift Card Program" was critical to maintain "market share and the loyalty of their valued customers and Members." *Motion to Continue Customer Programs Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain and Administer Prepetition Customer Programs, Promotions, and Practices, (B) Honor Related Prepetition Obligations, and (II) Granting Related Relief*, p. 6. [D.I. 9.]  The payment in the form of $25 gift cards to Class members may end up driving traffic to Debtors' business, increase brand loyalty, and ultimately help its bottom line.  Certainly, the provision of gift cards will not threaten to adversely affect the administration of the Reorganized Debtors or the vested estate.

30.     Courts considering the third *Musicland* factor often focus on the issue of Debtors' and the U.S. Trustee's knowledge of the Class claim, and the element of surprise. Here, there was no surprise – Debtors and the U.S. Trustee knew of the pre-petition litigation (which cited the estimated $120 million claim in the complaint), knew of the timely Class

Proof of Claim, and knew of Menacho's plan to pursue it – as he even applied to be on the Committee. Krivoshey Decl. ¶¶ 4-5. Debtors made the strategic decision to wait to object to the Claim until eleven (11) months after it was filed, and nine (9) months after the Plan was confirmed, while knowing of the pendency, subject matter, and size of the Claim. Once Debtors objected, Menacho immediately began preparing the present motion and moved for certification at the earliest practicable time. "Hence, and unlike in *Musicland* and the many cases with similar fact patterns, there is neither a laches argument nor a surprise element to this request." *In re Pac. Sunwear of Ca., Inc*., 2016 WL 3564484, at *6; *see In re Chaparral Energy, Inc*., 571 B.R. at 648-49 ("Most of the Debtors' original arguments have been mooted by the Debtors' determination to go forward with confirmation and consummation of their plan of reorganization with this Claim Objection outstanding."); *id*. at 649 ("the Debtors are hard-pressed to argue that allowing the Class Claim will significantly delay administration of the estate when their approach deferred a final determination on this issue to a later date"); *In re MF Global Inc*., 512 B.R. at 765 (finding third *Musicland* factor satisfied where the "Claim was timely filed and the Trustee has known for some time of the Claimants' intent to pursue their claims for unpaid accrued vacation time through the claims process."); *In re Connaught Grp., Ltd*., 491 B.R. at 99 (finding third *Musicland* factor satisfied where the plaintiff "asserted her class claim at the beginning of the case," and the debtor and creditors committee "were aware of the class claim and the intent to press it"); *In re Kaiser Grp. Int'l, Inc*., 278 B.R at 64 (holding that debtors were "not prejudiced" by the allowance of the class claim, "since the Debtors had notice of the existence of the class claim before the bar date"). And, the "Court confirmed the plan before the deadline for making the certification motion had even passed." *In re Connaught Grp., Ltd*., 491 B.R. at 99.

Case 20-11568-KBO    Doc 306    Filed 10/12/21    Page 23 of 30

31.    As discussed below, if the Court were to deny certification, it would have to extend the bar date to allow Class members to file individual claims, "which would result in a greater delay in administration of the case." *In re MF Global Inc*., 512 B.R. at 765. *See also In re Connaught Grp., Ltd*., 491 B.R. at 99 ("[I]f I deny the class certification and extend the bar date for the WARN Act claimants, the delay may be as great or greater than if I grant the motion"). Processing the Class Proof of Claim would also allow the Court to examine any of Debtors' defenses to the Claim as a whole, instead of having to decide the same issue on an individual basis for thousands of claimants. *See In re Connaught Grp., Ltd*., 491 B.R. at 99.

32.    Finally, the Court may exercise its discretion to apply Bankruptcy Rule 7023 for the purpose of deterrence. *See In re Chaparral Energy, Inc*., 571 B.R. at 650 (citing deterrence as a factor when choosing to apply Bakruptcy Rule 7023). In the *California Action*, Debtors were adamant that they did nothing wrong, and that class members' membership agreements *permitted* Debtors to continue charging class members' credit cards even after their gyms were closed. In their Disclosure Statement, Debtors likewise state that they stopped collecting monthly membership revenues on April 15, 2020 "*notwithstanding* the temporary closure provisions set forth in the Debtors' various membership agreements." Disclosure Statement at 21 [D.I. 1246] (emphasis added). Absent a finding on a Class basis that Debtors' conduct is illegal, Debtors have made it amply clear that they intend to continue the practice, and will repeat their inappropriate conduct, should they be forced to close their clubs again in the future.[5]

---

[5] Though the Court need not make a finding concerning the legality of Debtors' conduct for purpose of deciding the present motion, Menacho refers the Court to his Amended Complaint, attached to the Class Proof of Claim, which discusses the precise terms of the membership agreements in depth, and debunks the myriad arguments Debtors made in an initial motion to dismiss filed in the Northern District of California action. *See* Krivoshey Decl., Ex. 1., at pdf pages 9-14.

00628750 2                    19

33.     For the foregoing reasons, the Court should exercise its discretion and apply Bankruptcy Rule 7023 and Fed. R. Civ. P to the Class Proof of Claim.

**D.     The Requirements Of Fed. R. Civ. P. 23 Are Satisfied**

34.     As discussed herein, each of the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are satisfied.  Accordingly, Menacho seeks certification of the following Class:

> **All persons with a Membership Agreement Claim who were charged and paid monthly membership fees to 24 Hour Fitness for a period of time when Debtor's gyms were closed during the COVID-19 pandemic in March and April 2020.**

**1.     Rule 23(a)(1) Numerosity Requirement Is Satisfied**

35.     "The requirement of numerosity does not require that joinder be impossible but instead dictates that joinder of all the parties is impracticable when the procedure would be inefficient, costly, time-consuming, and probably confusing." *In re Kaiser Grp., Int'l, Inc.*, 278 B.R at 64 (quotations omitted).  "A court may make 'common sense assumptions' in order to support the finding of numerosity."  *Id.*  Typically, "numerosity is presumed when the class has at least 40 members."  *In re MF Global Inc.*, 512 B.R. at 765 n. 6; *see also In re Kaiser Grp., Int'l, Inc.*, 278 B.R at 64 (numerosity satisfied where class comprised of 47 members).  Here, numerosity cannot reasonably be challenged.  Debtors have millions of customers, and have closed at least one hundred thirty (130) clubs nationwide permanently.  Even if there were only one class member per closed club, numerosity would still be satisfied.

**2.     Rule 23(a)(2) Commonality Requirement Is Satisfied**

36.     "Rule 23(a)(2) requires a showing of the existence of 'questions of law or fact common to the class.'"  *In re Kaiser Grp., Int'l, Inc.*, 278 B.R. at 64 (quoting Rule 23(a)(2)).  "This threshold of commonality is not high."  *Id.* (quotations omitted).  "All class members need not share identical claims; factual differences among the claims of the putative class

members do not defeat certification." *Id*. "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id*.

37.    Here, commonality is easily satisfied.  Menacho and putative Class members claims share, *inter alia*, the following questions of law and fact: (a) whether the Class have rights against Debtors based on the Membership Agreements; (b) whether Debtors breached their obligations and duties under the Membership Agreements; (c) whether it was lawful for Debtors to continue charging Class members fees while 100 percent of their gyms were closed for a period of more than 30 days (and many permanently); (d) whether it was lawful for Debtors to make it impossible for Class members to cancel or pause their memberships during the closures; (e) whether Menacho and Class members are entitled to refunds under the Membership Agreements related to the COVID-19 closures; and (f) and whether Menacho and the Class have sustained damages and, if so, the proper measure of such damages.  "All these issues are common to all members of the Class.  This satisfies the threshold issue of whether the claims share common questions of law or fact." *Id*.  At heart, Debtors vehemently contend that no refunds are owed to any Class members due to closure of its clubs during COVID-19.  The correctness (or the incorrectness) of this position is central, and must be resolved, for all Class members.

**3.    Rule 23(a)(3) Typicality Requirement Is Satisfied**

38.    Rule 23(a)(3) requires that "the claims or defenses of the class representative be typical of the claims or defenses of the class."  "Typicality entails an inquiry into whether the named plaintiff's individual circumstances are markedly different or … the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *In re Kaiser Grp., Int'l, Inc.*, 278 B.R. at 65 (quotations

omitted). "Much like commonality, the typicality requirement does not mandate that all class members share identical claims." *Id*. at 66.

39.     Typicality is also easily satisfied here.  Like Class members, Menacho was charged and paid a fee while Debtors' gyms were closed due to COVID-19, and did not receive a refund.  *See California Action* Am. Compl. ¶¶ 14.  Like Class members, Menacho's Membership Agreement was "terminated by its terms."  *See* Krivoshey Decl., Ex. 6.  And like all other Class members, his right to relief depends on a finding that Debtors' charging membership fees while all of their gyms were closed breached the membership agreement – which is a form contract of adhesion that is materially identical for all Class members.  And, like Class members, Menacho seeks a $25 Gift Card under the terms of the Plan, which, through this motion and the Class Proof of Claim, he seeks to make available the same $25 Gift Cards for all Class members.

### 4.     Rule 23(a)(4) Adequacy Requirement Is Satisfied

40.     "Rule 23(a)(4) requires that "the representative party will fairly and adequately protect the interests of the class."  Rule 23(a)(4).  "A Class has adequate representation if (1) counsel for the named plaintiffs is qualified, experienced, and generally able to conduct the suit, and (2) the class representative's interests are not antagonistic to those of the unnamed members of the class."  *In re Kaiser Grp. Int'l, Inc*., 278 B.R. at 66.  Here, Bursor & Fisher, P.A., counsel for Menacho in the *California Action* and here have vast experience litigating complex class actions through every phase of litigation, including trial, appeal, and bankruptcy. Bursor & Fisher's firm resume is attached as Exhibit 7 to the Krivoshey Declaration.  Menacho is also represented in this bankruptcy by experienced local counsel residing in this District, who specialize both in in bankruptcy litigation before this Court and class action and corporate litigation before the state and federal courts for the State of Delaware.  *See* Declaration of R.

Grant Dick, Ex. 1.  "Additionally, [Menacho] has no conflict of interest that would negate his representation of the entire class.  The Claimant and class members have similar interests in established that the Debtors' conduct violated the provisions of the [Membership] Agreement." *See In re Kaiser Grp. Int'l, Inc*., 278 B.R. at 66.  Accordingly, both Claimant and his counsel are adequate, and Rule 23(a)(4) is satisfied.

### 5.    Rule 23(b)(3) Predominancy Requirement Is Satisfied

41.    "The purpose of requiring common questions of law or fact to predominate is to ensure that the class is sufficiently cohesive to warrant adjudication by representation." *In re Kaiser Grp. Int'l, Inc*., 278 B.R. at 66.  The Class claims here a) stem from the same form, adhesion contract, b) have the same clauses concerning refunds, cancellation, and gym closures, and c) require the same legal interpretation of those clauses for a finding of liability. Debtors closed 100 percent of their gyms nationwide, while continuing to charge Class members nationwide during the exact same period of time (from March 16 to April 15, 2020). By definition, all Class members' contracts were terminated by their terms – either through permanent closure of the gyms or through Class members' cancellation of the contracts.  Under such circumstances, predominance is easily satisfied.  *See, e.g., Gillis v. Respond Power, LLC*, 677 Fed. Appx. 752, 756-757 (3d Cir. 2017) ("Because form contracts should be interpreted uniformly as to all signatories … federal courts have recognized that claims involving the interpretation of standard form of contracts are particularly well-suited for class treatment."); *Kolbe v. BAC Home Loans Serv., LP*, 738 F.3d 432, 441 (1st Cir. 2013) ("The issue of interpreting form contract language frequently arises in the context of class action certification. Several federal courts have certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class

member.").  Further, any potential damages calculations would not defeat predominance in this

bankruptcy, as the Plan provides that all Membership Agreement Claimants receive $25 Gift

Cards if their claims are valued at under $250, which is likely the case for every single Class

member because Debtors only made the unlawful charges for a period of one month.  And, in

any case, "it has been commonly recognized that the necessity for calculation of damages on

an individual basis should not preclude class determination when the common issues which

determine liability predominate."  *In re Pac. Sunwear of Ca., Inc*., 2016 WL 3564484, at *9.

### 6.    Rule 23(b)(3) Superiority Requirement Is Satisfied

42.    Rule 23(b)(3) also requires a finding that the "class action is superior to other

available methods for the fair and efficient adjudication of the controversy."  "Within this

requirement a court should consider the difficulties likely to be encountered in the management

of a class action."  *In re Kaiser Grp. Int'l, Inc*., 278 B.R. at 67.  As discussed in *In re Pac.

Sunwear*, "Judge Walrath's analysis in [*In re United Cos. Fin. Corp.*, 276 B.R. 368, 376

(Bankr. D. Del. 2002)] is directly on point here":

> First, as in *United Companies,* it is probably the case that most unnamed class members
> do not know of their rights under California law, so it is unlikely they would file claims
> even if they received proper notice.  And … the unnamed class members have not
> previously received notice of the [*California Action*].  Second, … the recovery of each
> class member (regardless of priority) is likely to be relatively small, rendering
> prosecution of such claims cost-prohibitive.  While it is true that the cost of filing a
> claim is *de* minimis, the cost of defending the inevitable objection is not.  Finally, I
> agree with Judge Walrath, that the filing of a class claim is similar procedurally to a
> debtor's use of an omnibus objection, which has become ubiquitous in this court.
> Omnibus objections present (or should present) common issues that are amenable to
> global resolution.  In this instance, I have no doubt that any individual claims filed on
> the basis of the class action would be met with an omnibus objection.  Thus, to permit
> the filing of a class claim will streamline the resolution of the legal issues.  As with
> omnibus objections, objections to individual claims can be subsequently resolved.  For
> all of these reasons, I find the filing of a class proof of claim to be a superior method
> to resolve these claims.

*In re Pac. Sunwear of Ca., Inc*., 2016 WL 3564484, at *10.  *See also In re Kaiser Grp. Int'l, Inc*., 278 B.R. at 67 (holding that "there is no better method to adjudicate the claims aside from a class action" where the "amount of damages to be recovered by each class member is relatively small" and where "the issues … arise from the same course of conduct and an adjudication of all the common issues once will promote judicial economy and efficiency.").

43.     A class action is also "superior to other methods available, such as extending the bar date to allow individual claimants to file proofs of claim." *In re MF Global Inc*., 512 B.R. at 768.  As discussed above, should the Court deny class certification, it will have to reset the bar date to allow Class members to file claim due to tolling rules.

## ARGUMENT: IF THE COURT DECLINES TO CERTIFY THE CLASS, IT SHOULD SET NEW BAR DATE FOR MEMBERSHIP CLAIMS

44.     As discussed above, Menacho's filing of the Class Proof of Claim tolled Class members' deadline to file individual claims until after the Court ruled on the validity of the Class Proof of Claim.  Should the Court disallow the Class Proof of Claim and deny class certification, it should set a new deadline by which Class members can file Membership Claims.  *See, e.g., In re MF Global Inc*., 512 B.R. at 765 ("if the Court were to deny class certification, the Court would extend the bar date to allow each of the MFGI Class Claimants to file individual claims"); *In re Connaught Grp., Ltd*., 491 B.R. at 97 ("If the representative files a timely adversary proceeding or class proof of claim, and the Court denies a motion to certify the class, it should set a reasonable bar date to allow the members of the putative class to file individual claims"); *In re Kaiser Grp., Int'l, Inc*., 278 B.R. at 64 ("If the class claim is certified, then the claims of all the members of the class are incorporated in the proof of claim that was timely filed."); *In re Chaparral Energy, Inc*., 571 B.R. at 684 n. 20 ("there is a line of cases … adopted by at least two circuit courts, for the proposition that the tolling rule

applicable to class actions outside of the bankruptcy context is also applicable in the bankruptcy context").

**CONCLUSION**

45.     For the foregoing reasons, the Court should apply Rule 23, certify the Class, appoint Menacho as Class Representative, and appoint Bursor & Fisher, P.A. and Cooch and Taylor, P.A. as Class Counsel.  Should the Court deny class certification, it should set a new bar date for Class members to file individual claims.

Dated: October 12, 2021
Wilmington, Delaware

**COOCH AND TAYLOR, P.A**

*/s/ R. Grant Dick IV*
R. Grant Dick IV (Del. No. 5123)
Dean R. Roland (Del. No. 6459)
The Nemours Building
1007 N. Orange St., Suite 1120
Wilmington, DE 19801
Telephone: 302-984-3867
Facsimile:  302-984-3939
Email: gdick@coochtaylor.com

– and –

**BURSOR & FISHER, P.A.**
Yeremey O. Krivoshey
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ykrivoshey@bursor.com

*Counsel for Representative Claimant*