## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RS FIT NW LLC, | Case No. 20-11568 (KBO) |
| Reorganized Debtor.[1] | **Objection Deadline: March 3, 2022 at 4:00 pm (ET)**<br>**Hearing Date: March 31, 2022 at 10:00 am (ET)** |

### THIRD MOTION OF REORGANIZED COMPANY
### PURSUANT TO 11 U.S.C. §§ 502(c) AND 105(a) TO ESTIMATE AND ALLOW
### UNLIQUIDATED MEMBERSHIP CLAIMS FOR DISTRIBUTION PURPOSES

The above-captioned reorganized debtor in this chapter 11 case (the "Reorganized Debtor") and All Day Holdings LLC (together with the Reorganized Debtor, the "Reorganized Company") hereby moves (the "Motion"), pursuant to sections 502(c) and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), for entry of an order, substantially in the form attached to this Motion as **Exhibit A**, (i) estimating and allowing 305 Unliquidated Membership Claims filed in the chapter 11 case that are set forth on **Schedule 1** to **Exhibit A** (collectively, the "Unliquidated Membership Claims") at $250.01 for purposes of distribution under the Plan (defined below); and (ii) granting related relief.  In support of this Motion, the Reorganized Company submits the declaration of Michael Paykin, Managing Director at FTI Consulting, Inc., a copy of which is attached to this Motion as **Exhibit B**.  In support of the Motion, the Reorganized Company respectfully represents as follows[2]:

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, as applicable, is RS FIT NW LLC (9372). By order dated March 16, 2021 [RS FIT Docket No. 7], the remaining reorganized debtor affiliates' (the "Reorganized Debtors") chapter 11 cases were closed. The Reorganized Debtors' corporate headquarters and service address is 24 Hour Fitness USA, Inc., 1265 Laurel Tree Lane, Carlsbad, CA 92011.

[2] Docket numbers cited herein refer to 24 Hour Fitness Worldwide, Inc. (20-11558 (KBO)) ("24 Hour Fitness") and RS FIT NW LLC (20-11568 (KBO)) ("RS FIT"), as applicable.

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XI of the Plan (as defined herein), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   The Reorganized Company confirms its consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and rule bases for the relief requested herein are sections 105(a), 363, and 554(a) of the Bankruptcy Code.

## BACKGROUND

4.      On June 15, 2020 (the "Petition Date"), 24 Hour Fitness Worldwide, Inc. and its affiliated debtors in possession (each, a "Debtor" and collectively, the "Debtors") commenced voluntary cases under the Bankruptcy Code and were authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On December 22, 2020, the Court entered the *Order (I) Confirming First Amended Joint Chapter 11 Plan of Reorganization of 24 Hour Fitness Worldwide, Inc. and Its Affiliated Debtors and (II) Granting Related Relief* [24 Hour Fitness Docket No. 1508] (the "Confirmation Order").   The Confirmation Order confirmed and approved the *First Amended*

*Joint Chapter 11 Plan of Reorganization of 24 Hour Fitness Worldwide, Inc. and its Affiliated Debtors* [24 Hour Fitness Docket No. 1487] (the "Plan").

6.      All conditions precedent to consummation of the Plan were either satisfied or waived in accordance with Article IX of the Plan, such that the Plan became effective on December 29, 2020 (the "Effective Date"), and as a result, the Plan has been substantially consummated, as that term is defined by section 1101(2) of the Bankruptcy Code. (*See Notice of Effective Date, and Entry of Order (I) Confirming First Amended Joint Chapter 11 Plan of Reorganization of 24 Hour Fitness Worldwide, Inc. and its Affiliated Debtors and (II) Granting Related Relief* [24 Hour Fitness Docket No. 1551].)

7.      On March 16, 2021, the Court entered the *Final Decree (I) Closing the Affiliate Cases and (II) Granting Related Relief* [24 Hour Fitness Docket No. 1782] (the "Affiliate Case Closing Order"), closing each of the chapter 11 cases other than Reorganized Debtor's chapter 11 case.  Pursuant to the Affiliate Case Closing Order, entry of such order was "without prejudice to the rights of the Reorganized Debtors or any other party with requisite standing to . . . object to claims filed against any Debtor or Reorganized Debtor . . . ." (Affiliate Case Closing Order ¶ 10.)

8.      Since the Effective Date of the Plan, the Reorganized Company, with the assistance of its advisors, has worked to review and reconcile proofs of claim filed against the Debtors' estates.  The ongoing claims reconciliation process involves the collective effort of the Reorganized Company's employees, counsel to the Reorganized Company, Ropes & Gray LLP and Pachulski, Stang, Ziehl & Jones LLP, the Reorganized Company's financial advisor, FTI Consulting Inc., and Prime Clerk, LLC.

DOCS_DE:238388.1 00162/001

9.    To date, the Reorganized Company has filed thirty-eight omnibus claim objections.[3] The Court has entered orders with respect to thirty-six of the omnibus objections.[4] The Reorganized Company has also filed seven notices of satisfaction of claims.[5]

10.    On November 19, 2021, the Reorganized Company filed the *Motion of Reorganized Company Pursuant to 11 U.S.C. §§ 502(c) and 105(a) to Estimate and Allow Unliquidated Membership Claims for Distribution Purposes* [Docket No. 359] (the "First Motion to Estimate") and on December 14, 2021, the Court entered the *Order Granting Motion of Reorganized Company Pursuant to 11 U.S.C. §§ 502(c) and 105(a) to Estimate and Allow Unliquidated Membership Claims for Distribution Purposes* [Docket No. 382].

11.    On January 7, 2022, the Reorganized Company filed the *Second Motion of Reorganized Company Pursuant to 11 U.S.C. §§ 502(c) and 105(a) to Estimate and Allow Unliquidated Membership Claims for Distribution Purposes* [Docket No. 402] (the "Second Motion to Estimate" and together with the First Motion to Estimate, the "Motions to Estimate") and on January 25, 2022, the Court entered the *Order Granting Second Motion of Reorganized Company Pursuant to 11 U.S.C. §§ 502(c) and 105(a) to Estimate and Allow Unliquidated Membership Claims for Distribution Purposes* [Docket No. 440].

## THE REORGANIZED COMPANY'S CLAIMS ADMINISTRATION

12.    Since the Effective Date, the Reorganized Company has satisfied, settled, resolved or otherwise addressed objectionable components of over 3,900 Proofs of Claim

---

[3]    The thirty-eight omnibus claims objections are filed at 24 Hour Fitness Docket Nos. 1776, 1777, 1778, 1779 and RS FIT Docket Nos. 73, 74, 75, 119, 120, 121, 122, 123, 179, 180, 181, 182, 226, 227, 228, 250, 251, 252, 278, 279, 280, 281, 332, 333, 334, 353, 354, 355, 395, 396, 397, 437, 438 and 439.

[4]    The orders on the thirty-six omnibus objections are filed at RS FIT Docket Nos. 54, 55, 57, 61, 109, 110, 111, 168, 169, 170, 171, 172, 217, 218, 219, 220, 243, 244, 247, 282, 283, 284, 315, 316, 317, 322, 356, 357, 381, 383, 384, 420, 424, 425 and 462.

[5]    The notices of satisfaction of claims are filed at RS FIT Docket Nos. 101, 166, 238, 337, 343, 449 and 461.

DOCS_DE:238388.1 00162/001

through thirty-eight omnibus objections and approximately 650 Proofs of Claims and scheduled

claims through seven notices of satisfaction of claims with related orders entered by the Court on

thirty-six of the filed objections.  The Reorganized Company is continuing to review and assess

the claims pool in an effort to settle or otherwise consensually resolve as many of the remaining

claims as efficiently as possible.

13.    Based on these efforts, the Reorganized Company believes the claims pool has

been significantly reconciled.  There remain, however, a number of unliquidated claims that must

be addressed before any distribution can be made.  In particular, and as discussed below, a

substantial number of Membership Agreement Claims have been filed in unliquidated and/or

contingent amounts that, in turn, require reconciliation in order to permit distributions on account

of such claims that are Allowed Claims.

14.    The Plan provides that:

"Before or after the Effective Date, the Debtors or the Reorganized
Company, as applicable, may at any time request that the Bankruptcy
Court estimate any Disputed Claim or Disputed Interest that is contingent
or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any
reason . . . [i]n the event that the Bankruptcy Court estimates any
Disputed, contingent, or unliquidated Claim or Interest, that estimated
amount shall constitute a maximum limitation on such Claim or Interest
for all purposes under the Plan (including for purposes of
distributions) . . . ."

Plan, Article VII.C.

15.    Accordingly, the Reorganized Company has filed this Motion to address the

Unliquidated Membership Claims.

**RELIEF REQUESTED**

16.    By this Motion, the Reorganized Company requests entry of an order,

substantially in the form attached hereto as **Exhibit A**, (i) estimating and allowing at $250.01 the

5

Unliquidated Membership Claims listed on **Schedule 1** to the proposed order attached to this Motion for purposes of distribution under the Plan; and (ii) granting related relief.

**BASIS FOR RELIEF**

17.     Section 502(c) of the Bankruptcy Code mandates the estimation of all contingent or unliquidated claims which, unless fixed or liquidated, would unduly delay the administration of a debtor's estate, and provides, in pertinent part, as follows:

> "There shall be estimated for purpose of allowance under this section –
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ."

18.     Section 502(c) "provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine." *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003).  By its terms, section 502(c) of the Bankruptcy Code requires a bankruptcy court to estimate a claim where liquidation of that claim would otherwise unduly delay the reorganization process.  *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011–12 (4th Cir. 1986) (noting that the duty to estimate contingent or unliquidated claims is "a mandatory obligation of the bankruptcy court" where otherwise the claim would cause undue delay).

19.     Indeed, the clearly stated purpose for allowing the estimation of claims is to "avoid undue delay in the administration of bankruptcy proceedings." *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 957 (2d Cir. 1993); *see In re Stone & Webster, Inc.*, 279 B.R. 748, 810 (Bankr. D. Del. 2002) ("The purpose of an estimation proceeding is to avoid delays that may arise from waiting to fix the value of contingent claims.  An estimation proceeding expedites the bankruptcy process so that key steps in a reorganization that depend on

the fixing of value may proceed.  In essence, an estimation proceeding is a procedural device that is to be used when adjudication and liquidation of a claim would take an unreasonably long time to allow courts to quickly and flexibly estimate the amount of an as yet to be liquidated claim.") (citation omitted); 4 Collier on Bankruptcy ¶ 502.04(1) (16th ed. 2021) ("[S]ection 502(c) provides a mechanism for estimating the amount of a contingent or unliquidated claim for the purpose of its allowance where the actual liquidation of the claim as determined by the court would unduly delay the administration of the case."); *see also In re Roman Catholic Archbishop or Portland in Or.*, 339 B.R. 215, 219 (Bankr. D. Or. 2006) ("When actual liquidation of claims would unduly delay administration of the bankruptcy estate, estimation is mandatory."); *In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001) ("Under 11 U.S.C. § 502(c), a claim may be estimated for purposes of allowance if it is unliquidated and liquidation would unduly delay the administration of the case.").

20.     Defining "undue delay" under Section 502(c) of the Bankruptcy Code, is "a problem whose solution ultimately rests on the exercise of judicial discretion in light of the circumstances of the case, particularly the probable duration of the liquidation process as compared with the future uncertainty due to the contingency in question."  *In re Roman Catholic Archbishop*, 339 B.R. at 222 (internal quotation marks omitted).  This analysis implicates both (1) "how long it will take before . . . [a] claim will be liquidated and determined" by an alternative forum and (2) whether a "plan of reorganization can be confirmed so long as [the relevant] claim remains unliquidated and not estimated."  *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986).

21.     Section 502(c) does not prescribe the method for estimating a claim, and courts therefore have discretion to utilize any valuation model that best suits the circumstances of the

case at hand.  *See, e.g.*, *Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union Square, Inc.)*, 160 B.R. 40, 42 (S.D.N.Y. 1993) (stating that "a bankruptcy court may use whatever method is best suited to the circumstances"). "[W]hen estimating claims, bankruptcy courts may use whatever method is best suited to the contingencies of the case, so long as the procedure is consistent with the fundamental policy of Chapter 11 that a reorganization must be accomplished quickly and efficiently." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 278 (S.D.N.Y. 2007) (citation and internal quotations omitted).

22.     A claim is contingent when "the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor."  *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) (citing *Brockenbrough v. Commissioner*, 61 B.R. 685, 686 (W.D. Va. 1986)).  A claim is unliquidated if it is not subject to "ready determination and precision in computation of the amount due."  *Fostvdt,* 823 F.2d at 306 (quoting *Sylvester v. Dow Jones & Company, Inc. (In re Sylvester)*, 19 B.R. 671, 673 (D.N.J. 1975)).

23.     In addition, section 105(a) of the Bankruptcy Code affords courts wide latitude in effectuating the provisions of section 502(c), and provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) allows courts to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2004) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)).

DOCS_DE:238388.1 00162/001

24.     The Reorganized Company submits that it is appropriate to estimate and allow the Unliquidated Membership Claims at $250.01 for purposes of distribution.  The claims bar date in these chapter 11 cases occurred on October 2, 2020.  The Reorganized Company's Plan was confirmed and consummated nearly a year ago.  The Reorganized Company seeks to complete administration as quickly as possible, and the Reorganized Company respectfully submits that estimating and allowing the Unliquidated Membership Claims will facilitate this process.  Conversely, the Reorganized Company believes that it would not be a prudent step to continue to wait for an indefinite period of time for each of the Unliquidated Membership Claims to be resolved and liquidated before making the distributions provided for under the Plan.  Similarly, other creditors should not be required to wait an indeterminate amount of time to receive their respective distribution under the Plan, as applicable.  Waiting for the resolution of such claims would unduly delay the administration of the chapter 11 case.

25.     Many of the Unliquidated Membership Claims were filed with no information, a blank space, or the word "unliquidated" written in the claim amount box on the proof of claim form.  In addition, the claimants filing the Unliquidated Membership Claims have not moved to amend their claims, or otherwise take action to fix the Unliquidated Membership Claims at a certain dollar amount.

26.     Each of the Unliquidated Membership Claims are Membership Agreement Claims as that term is defined in the Plan.  Pursuant to the Plan, distributions on account of Membership Agreement Claims occur as follows: "(i) with respect to each Membership Agreement Claim that is Allowed in amount less than or equal to $250.00, a Gift Card in the amount of $25.00; and (ii) with respect to each Membership Agreement Claim that is Allowed in amount greater than $250.00, a Gift Card in the amount of $50.00."  (Plan, Article III.B.5.)  Accordingly, by

9

estimating and allowing the Unliquidated Membership Claims at $250.01, Holders of Unliquidated Membership Claims are receiving the maximum distribution afforded to Holders of Membership Agreement Claims under the Plan.

27.    Through the Motions to Estimate, the Reorganized Company addressed 900 unliquidated membership claims.  Through this Motion, the Reorganized Company seeks to estimate and allow 305 Unliquidated Membership Claims.

28.    Approximately 1,500 unliquidated membership claims were filed in the chapter 11 case and approximately 200 remain on the claims register.  The Reorganized Company anticipates requesting relief to estimate the remaining unliquidated membership claims pursuant to separate motions and this Motion only seeks to estimate and allow the Unliquidated Membership Claims in **Schedule 1** to **Exhibit A**.

## NOTICE

29.    Notice of this Motion has been provided to the following parties, or their counsel, if known:  (a) the Office of the United States Trustee, (b) all claimants that filed the Unliquidated Membership Claims; and (c) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  In light of the nature of the relief requested, the Reorganized Company respectfully submits that no further notice is necessary.

## NO PRIOR REQUEST

30.    No prior request for the particular relief sought in this Motion has been made to this or any other court in connection with this chapter 11 case.

DOCS_DE:238388.1 00162/001

WHEREFORE the Reorganized Company respectfully requests that the Court: (a) enter an order, substantially in the form annexed as **Exhibit A** hereto, granting the relief requested herein; and (b) grant such other and further relief as may be just.

Dated: February 17, 2022  
      New York, New York

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*_____  
Laura Davis Jones (DE Bar No. 2436)  
Timothy P. Cairns (DE Bar No. 4228)  
Peter J. Keane (DE Bar No. 5503)  
919 North Market Street, 17th Floor  
P.O. Box 8705  
Wilmington, Delaware 19899-8705 (Courier 19801)  
Telephone:  (302) 652-4100  
Facsimile:  (302) 652-4400  

-and-

**ROPES & GRAY LLP**  
Ryan Preston Dahl (admitted *pro hac vice*)  
Eric M. Sherman (admitted *pro hac vice*)  
1211 Avenue of the Americas  
New York, New York 10036  
Telephone:  (212) 596-9000  
Facsimile:  (212) 596-9090  

*Attorneys for the Reorganized Company*