Rhonda Hudson

909 Third Avenue # 7912

New York, NY 10150

RECEIVED

2023 NOV -7  PM 12: 11

CLERK
U.S. BANKRUPTCY COURT

To: The Honorable Laurie Selber Silverstein-The Chief Judge.

The Honorable Karen B. Owens-U.S. Bankruptcy Judge

USBC District of Delaware

824 Market Street

Wilmington, DE 19801

24 Hour fitness Worldwide Inc., et al,        Case # 20-11558

 Debtor

Rhonda Hudson

Creditor                                Claims #9404, 24973, 27128

**United States Bankruptcy Court for the District of Delaware**
**Case No. 20-11568**
**Proof of claims 9404, 24973, and 27128**

CREDITOR RHONDA HUDSON'S

(1)  FINDINGS AND RESPONSES TO RS FIT NW LLC. 24 HOUR FITNESS WORLDWIDE'S ET.
AL'S.
RESPONSE TO CREDITOR RHONDA HUDSON'S MOTION FOR SUMMARY JUDGEMENT
AND
DECLARATIONOF KATIE HEALON

(2)  REQUEST TO CONTINUE TO ALLOW PROOF OF CLAIMS 9404, 24973, 27128, AND
MOTION FOR SUMMARY JUDGEMENT

## CREDiTOR RHONDA HUDSON'S SUMMARY OF DEBTOR RS FIT NW LLC.'S REPONSE TO REQUEST OF SUMMARY JUDGEMENT

The response from debtor RS FIT NW LLC. in essence says that Ms. Hudson is not owed
money for earnings because she did not qualify for, Split Shift pay, Spread of Hours pay, or
commissions as claimed. Thus, we paid her appropriately and did not mistreat her. Therefore,
she was not discriminated against. Furthermore, her claim for discrimination was not filed in a
timely manner so it should be barred and all of her claims should be dismissed and expunged.

### Response from Creditor Rhonda Hudson

Clarity on New York Split Shift Mandate, Spread of Hours, and 10 Hour Rule'.

The New York Split Shift Mandate alone does not require more than 10 hours to be worked in a
single day and "no meal period of one hour or less shall be considered an interruption of
consecutive hours".

The New York Spread of Hours Rule  requires the more than 10 hours be worked in a single
workday and those 10 hours **will** include breaks, meal breaks, and time between shifts.

The New York 10 hour rule applies when more than 10 consecutive hours have been worked.

The  New York split shift, spread of hours, and 10 hour rule all require an additional hours pay.

These rules are separate  from and do not interfere with the weekly overtime rule.

Shift Defined-        Hours worked consecutively.

Workday Defined -  Hours worked in a single day.

Split Shift  premiums were not paid to creditor Rhonda Hudson as required by law. After multiple communications to the debtor, 24 Hour Fitness, by creditor Rhonda Hudson- the debtor *eventually* gave some additional pay to creditor Rhonda Hudson and identified it as split shift premium. However, that pay was not close to the amount actually owed therefore not paid in accordance with the law. See the paystub showing the extremely low amount of premium pay identified as Split Shift payment at the Year to date as compared to the amount it should have been- based on the year to date, the Split Shift and Spread of Hours requirement in Exhibit _H_ _Z_ _B_ . A year to date amount of $60.00 for Split Shift payments suggest that creditor Rhonda Hudson worked less than 4 Split Shift qualifying workdays from January through August, and that was not the case. Her work schedule required no less than 4 qualifying Split Shift and Spread of Hours days out of the 6 consecutive workdays she was scheduled to work every 7 days.

The New York split shift mandate, although not exclusively, often applies in situations where consecutive regularly scheduled shifts expand over the course of two workdays days causing a split between the time that working hours begin and end during a single workday. Thereby creating multiple shifts in a workday. This situation is often seen in consecutive overnight shifts and was the situation for creditor Rhonda Hudson. Creditor Rhonda Hudson's regularly scheduled work week required that four of the six consecutive workdays she worked fell into the categories of a Split Shift. See Exhibit _B_ The Spread of Hours Rule also applied to these scheduled four workdays. Ms. Hudson was hired as Service Representative-Night, not a Service Representative as claimed in debtor RS NW FIT LLC.'s reply and the declaration of Katie Healon. Ms. Hudson worked in the night position for the 11 plus years that she was employed with 24 Hour Fitness. During the last several months of her employment with the debtor( after the acceptance of her complaint to the D.O.E. regarding not being paid for Split Shift earnings or appropriately) the title of her position was changed to Service Expert Night. This change in title was in order with a company wide change of titles but did not change Ms. Hudson's expanded work responsibilities. Additionally, over the years of her employment it was not uncommon for Ms. Hudson's shifts to be extended for more than ten consecutive hours due to other employees being late, needing to leave early, or not showing up for work at all.

Hence, the investigation by the Department of Labor outlined in claim 9404. See proof of claim 9404

**The New York Spread of Hours Rule applies** because more than ten hours of work occurred between the hour that creditor Rhonda Hudson's work began and the hour of work that work ended on a workday since those hours must include breaks, meal breaks, and time off between working hours ( shifts ) in a single workday. Creditor Rhonda Hudson's work schedule created two shifts for four of the six consecutive workdays per 7days she worked. See Exhibit _H_ _Z_ _B_ Again, the New York Spread Of Hours Rule requires that the ten hour requirement calculation include any off duty time, meal breaks, and time between shifts on the same workday (calendar day). The Spread Of Hours Law often shares some characteristics of a Split Shift as it is a part of the Split Shift Mandate. The Spread of Hours Rule grants an additional hour of pay at the prevailing state or local minimum wage (whichever is higher). Manhattan's minimum wage has historically been higher than the New York State minimum wage and was throughout the time of Ms. Hudson's employment with 24 hour Fitness.  The Split Shift rule and the 10 Hour rule requires an addition hours pay. Creditor Rhonda Hudson's location of employment was 225 5th Avenue New York, N.Y. 10010 (Manhattan).

**Rhonda Hudson's position with the company was Service Representative-Night** (later called Service Expert Night),

Creditor Rhonda Hudson's Position with 24 Hour fitness was Service Representative- Night not Service Representative as claimed in the response from RS FIT NW LLC., and in the declaration of Katie Healon. See Exhibit $B2C$ . Differences between the Service Representative Night position and the Service Representative position are significant because of the hours of the different shifts, rates of pay, responsibilities, and their general relationship to the Split Shift and Spread of hours rules. The Service Representative Night position is a higher paying position than Service Representative and the scheduled hours for the Service Representative Night position required scheduled consecutive hours over the course of two days. Thereby frequently creating regular ongoing Split Shift situations unlike the typical Service Representative position. See Exhibit _____ $C$ . These differences greatly affect the relationship to the New York State Split Shift mandate and the 'Spread of Hours Law. Ms. Hudson's position of Service Representative-Night (later called Service Expert Night) carried a schedule of 10pm until 6am for five consecutive nights and 6 consecutive days. Four of those scheduled workdays fell into the Split Shift category regardless of whether or not she was required to work longer than her scheduled hours. Also, those four days that fell under the Split Shift mandate also qualified for the New York Spread of Hours Rule. See Exhibit _____ $B$ _____.For a short period of time just before  24 Hour Fitness filed bankruptcy, a company-wide change was made in position titles, and this is when Ms.Hudson's title was changed from Service Representative Night to Service Expert Night. However, her hours, responsibilities, and duties did not change.

Ms. Hudson states. "My weekly schedule consisted of 5 consecutive nights and six consecutive workdays per week. See Exhibit _____ $B$ _____ The hours were scheduled to begin at 10pm and end at 6 am the following day. Also, I typically started before 10pm and for the most part rarely finished by 6 am. The Spread of Hours Rule and Split Shift Rule applied to my scheduled 4 workdays days when I worked multiple shifts in a workday. The 10 Hour rule applied to days when I worked more than 10 consecutive hours  in a single workday. See Exhibit_____ $A$ _____.

**Regarding Claim 27128 for discrimination.** Claim 27128 should not be barred by date, dismissed or expunged as requested by the debtor. First, creditor Rhonda Hudson does not concede that proof of claim 27128 was not entered in a timely manner that can be acceptable to the court. Second, proof of claim 27128 should be allowed because of extenuating circumstances. Because of the severe Covid 19 pandemic that was happening in New York City during the time in question the filing of proof of claim 27128 was delayed. Creditor Rhonda Hudson was residing in New York City at the time and continues to do so. In New York City at that time- activity across the area either stopped or significantly slowed, for an extended period of time and during the time in question. Furthermore, a mandated quarantine throughout the area and for many including herself was in effect. During this time services, transportation, mail, printing, and more in the area either stopped or slowed tremendously. Ms. Hudson says that "the Covid 19 Pandemic affected me and my ability to file claim 27128 earlier". This alone is good reason to continue to allow Claim #27128. Additionally, personal tragedy- Ms. Hudson's mother was dying at the time and has since passed. Also, the claim is something of an extension of the first claim filed, and its substance is important and valuable. For these reason *and more t*he claim should continue to be allowed.

Moreover, it is believed that RS FIT NW LLC'S response and the deposition of Katie Healon in response to Ms. Hudson's request for Summary Judgement and objection to proof of claims

contains material information that further shows discrimination against her, and may be submitted as evidence of such. The continued denial of wages earned for no acceptable reason is believed to be a display of continued discrimination and hate with the intent to harm by causing financial impediment. Thereby giving further reason to continue to accept claims 27128, 9404, and 24973. See Exhibits A,B, C, and D.

### Regarding Creditor Rhonda Hudson being entitled to commissions, split shift premiums, and spread of hours pay-

Ms. Hudson says "I sold a large amount of memberships as a Service Representative-Night employee-so much so that a club Operations Manager requested that I begin to use my employee number when selling in order to get credit/commission for those sales. This request came well before a company-wide change in the sales system that occurred several months before the company's filing for chapter 11 bankruptcy protection. I was informed that receiving commissions on my sales may be an option for me even in my Service Representative-Night position by my operations manager. Unlike the position of a service representative, during my working hours no other 24 Hours Fitness staff was scheduled to be on duty or was on duty. Thus, my sales, service, and management work was welcomed and encouraged by management over the many years that I worked. This is one of the reasons that I do believe I should have been paid the commissions I earned. Also, the Split Shift, Spread of hours premiums, and 10 Hour Rule premiums should have been paid each time I earned them as required by law and they were not.

The debtors response to Ms. Hudson's request for summary judgement and request for the dismissal of claims 9404, 24973, and 27128  by  RS FIT NW LLC  may be submitted as further evidence from creditor Rhonda Hudson as discrimination and other violations outlined in the request for summary judgement and her proof of claims. As Ms. Hudson's claims are sound as evidence has shown and can show. See Exhibits A,B, and C.

### Regarding 24 Hour Fitness worldwide attempting to reach settlement with Ms.Hudson.

 24 Hour Fitness Worldwide / RS FIT NW LLC's. et.al  first contacted creditor Rhonda Hudson via their attorney's during the winter of 2023 and a few other times since then regarding a possible settlement. All of the offers were predicated with *if* the company agrees, but no guarantees. The first offer was for $1000, the second was for $2000, and the third was for approximately $15,000 ( an amount closer to a priority claim which is intended to be a partial payment of wages for relief until full payment can be made. It is believed that a priority claim (partial) offer should have been made more than two years ago). There has yet to be a reasonable settlement offer made considering the situation. Therefore, it is believed that no good faith attempt to settle the subject claims has been made by debtor RS FIT NW LLC.  As claimed by the debtors.

### Regarding Employers Fiduciary Duty

Prudence is a duty that employers owe employees and it is also a fiduciary duty. Furthermore, by not paying Ms. Hudson as required by law prudence was not given to creditor Rhonda Hudson as it should have been. Generally speaking, in a number of circumstances it has been

found that employers do not owe employees fiduciary duties. However, prudence should not be and is not one of those duties that is acceptable for employers to forgo particularly with regard to employee pay. Rather, employers do owe prudence to their employees especially regarding payment of their wages. Again, prudence is a fiduciary duty. Thus, RS FIT NW LLC. / 24 Hour Fitness Worldwide et.al did have a duty to pay me properly and on-time with correct amounts deducted. It is also believed that they should have provided safety training (I worked alone overnight, and there should have been self defense training), to provide a safe work place (I was threatened multiple times by individual members that were not removed from the club), and being treated with a sense of dignity and equality while respecting at least a minimum of privacy. Creditor Rhonda Hudson says 'in these ways I believe 24 hour fitness failed".

**Regarding Declaration of Katie Healon.**

The declaration of Ms. Katie Healon is not correct nor are pertinent conclusions in it. First, creditor Rhonda Hudson's position was Service Representative-Night, not Service Representative. The difference in the hours worked between the two positions generally are significant in relation to the New York Split Shift, and Spread of Hours. There was also a pay differential between these two positions. Ms. Healon's claim that creditor Rhonda Hudson only worked 8 hour shifts in her workday is inaccurate as shown by the sample copy of creditor Rhonda Hudson's time sheet. Creditor Rhonda Hudson also worked 6 and 2 hour shifts on four of her six scheduled workdays per week. See exhibit $B\ 2\ C$ . According to both the company and New York states definition of Split Shift. Katie Healon's claim that the Spread of Hours rule requires that an employee must work 10 hours in a single shift is contrary to New the York State Spread Of Hours Rule. See Exhibit _____$4$_____ . Rather, the New York Spread of Hours Rule addresses multiple shifts (of various hours) during the course of one workday, and how those hours are calculated to arrive at the 10 hour minimum requirement. Unlike the New York Spread of Hours Rule, the New York 10 hour rule applies to working 10 consecutive hours or more in a single shift. Had creditor Rhonda Hudson's scheduled shifts been every other day or had she held a position of Service Representative with consecutively scheduled workdays then - generally, Ms. Healon's claims would apply. However, Ms. Hudson's position was Service Representative-Night and she worked for six consecutive workdays per week thereby placing 4 of the 6 scheduled workdays into the category of split shift according to New York State law and company policy. Creditor Rhonda Hudson's work schedule also caused those same workdays to fall under the category of Spread of Hours according to New York State Law. See Exhibit $A\ 2\ B$ Ms. Healon's claims that creditor Hudson did not qualify for the Split Shift, or Spread of Hours rule are not correct according to New York State Law. Furthermore, when creditor Rhonda Hudson worked for more than 10 consecutive hours in a single workday she qualified for additional pay according to the 10 Hour rule. These findings are obvious. See Exhibit $A\ 2\ B$ Moreover, creditor Rhonda Hudson's Exhibits _____ and employment file (which has not been received from debtor RS FIT NW LLC./ 24 Hour Fitness despite multiple requests and a subpoena signed by the court for the employment file) further confirm creditor Rhonda Hudson's claims. The timesheet sample in Exhibit_____$B$_____ is an actual copy of one of creditor Rhonda Hudson's timesheets on that particular day. Thus, Ms. Healon's claim that debtor 24 Hour Fitness's policy on Spilt Shift premiums was compliant with New York State law is not reflected in debtor 24 Hour Fitness's treatment of creditor Rhonda Hudson's pay, and neither was the New York Spread of Hours Rule or the 10 Hour Rule.

In light of the New York Split Shift mandate, the Spread of Hours Rule, See exhibit $A\ 2\ B$ and employment records for Rhonda Hudson (many of which 24 Hour Fitness is believed to be

in possession of) it is believed that the response from  RS FIT NW LLC. / 24 Hour Fitness Worldwide et.al to creditor Rhonda Hudson's motion for summary judgement is disingenuous. Moreover, it does not appear to show a true reason acceptable to a court for not paying Ms. Hudson as required and reasonably expected. It is believed that the responses from  RS FIT NW LLC. are decidedly distracting, misguiding, and distort the actual overall situation of the subject claims regarding this case-and all in an attempt to not pay creditor Rhonda Hudson properly. It is believed that these continued actions display malice, unlawful discrimination, hate, and the intent to harm by impeding much needed pay.

Creditor Rhonda Hudson believes that her employment file from 24 Hour Fitness can further support her claims. However, despite her multiple requests for her employment files from RS NW LLC./ 24 Hour Fitness Worldwide, et.al the debtors have yet to provide them.

Debtor RS FIT NW LLC. did not file an Adversary Procedure or dispute creditor Rhonda Hudson's subject claims filed in 2020 at any time prior to her motion for summary judgement in 2023. Rather, unreasonable attempts to get creditor Rhonda Hudson to drop her claims were made by the debtor through what the debtor described as attempts at settlement in their response to creditor Rhonda Hudson's motion for a summary judgement.

Thus, it was reasonable for creditor Rhonda Hudson to believe there was and is no justifiable objection to her claims and request for summary judgement. Moreover, since debtor RS FIT NW LLC made no objection to Ms. Hudson's claims prior to the creditor Hudson's request for summary judgement and because debtor RS FIT NW LLC. / 24 Hour Fitness Worldwide, et.al has creditor Rhonda Hudson's employment file which is presumed to contain confirming information for Ms. Rhonda Hudson's claims-there should be no substantive objection to them.

### Regarding Debtors response regarding False Pretenses, False representation, Fraud while Acting In A Fiduciary Duty, and Actual Fraud, and Willful And Malicious Injury

The intent of these claims is to remove bankruptcy protections for the subject proof of claims, and to have the claims paid in full. An example of this situation may be as in the case of an adversary procedure. Additionally, it is plain to see that to impede substantial pay earned is harmful and intended to be so. Particularly after the need for the pay has been expressed multiple times.

Additionally, it may be argued that the debtors classification of the subject claims, 9404, 27128, and 24973 as unsecured claims is debatable because the matters of creditor Rhonda Hudson's proof of claims arose before the filing of chapter 11 bankruptcy. And, creditor Rhonda Hudson was a part of the 24 Hour Fitness organization as an employee.

Therefore, without any truthful, valid, good faith effort, or worthy reason to grant the debtors request to dismiss and expunge creditor Hudson's claims-it is only fitting that RS FIT NW LLC.'s  et.al objections to proof of claims 9404, 24973, and 27128 along with their request that those claims be dismissed and expunged; be dismissed and or denied.

Moreover, it is fitting that claims 9404, 24973, and 27128 continue to be allowed. Moreover, the motion for summary judgement in this case be allowed.

(2)

Because no truthful, credible, valid, good faith effort, or worthy reason for the dismissal or expungement of creditor Rhonda Hudson's claims 9404, 24973, and 27128 has been presented and because the validity and importance of these claims are paramount to the cornerstones of employment in the United States of America, and outweigh any possible excuse to dismiss or expunge them, these claims should be allowed. As the evidence has shown-these claims are good, just, and proper.

Therefore, creditor Rhonda Hudson prays the court will continue to allow these claims. Moreover, the belief continues to be that the debtor's bankruptcy protections in these claim should not apply because of RS FIT NW LLC's / 24 Hour Fitness Worldwide's unjustifiable actions toward creditor Rhonda Hudson- as evidence has shown. Furthermore, It is still believed that the debtor has shown: False Pretenses, False Representations, or actual Fraud, Fraud While Acting In A Fiduciary Capacity, and Willful and Malicious Injury, thereby disallowing bankruptcy protections for the debtor RS NW FIT LLC, et.al with regard to claims 9404, 24973, and 27128.

Creditor Rhonda Hudson wishes to reserve the right to submit further evidence as and if needed and awaits her requested employment file from 24 Hour Fitness for further supporting evidence.

It is believed that the debtors actions toward creditor Rhonda Hudson violate the civil rights act of 1964 (Pub. L. 88-352 78 Stat. 24 , enacted July 2, 1964). Illegal discrimination in the workplace is a serious matter and has an unfortunate long history in the United States that must not be excused and allowed to continue. Creditor Rhonda Hudson says, "I recently learned that in 2019 a police officer in Clayton Missouri was awarded $20 Million dollars for being discriminated against by his employer, and since the verdict the employer's leadership has committed to stamping out bias and made several changes within the organization. And, as a result the employer is seeing improvements. So verdicts in cases of mistreatment/ discrimination are important. They have an important meaningful effect on society and can make way for a better more just one. Verdicts have a strong hand in stamping out the stench of illegal discrimination and can begin to repair some of the damage discrimination causes."

## Conclusion

Wherefore, creditor Rhonda Hudson in an attempt to help right the wrongs imposed by the debtor against creditor Rhonda Hudson she looks to the Court, prays, and respectfully request that the Court deny and or dismiss debtor, RS FIT NW LLC. / 24 Hour Fitness Worldwide et.al objection to creditor Rhonda Hudson's claims in its entirety, and allow creditor Rhonda Hudson's claims and motion for Summary judgement to stand in their entireties. And in doing so grant the full amount of creditor Rhonda Hudson's three claims 9404, 24973, and 27128 along with appropriate punitive and other damages as the Court see's fit.

Respectfully Submitted,

*Rhonda Hudson*

Rhonda Hudson
ProSe

# Exhibit A



**Cornell Law School**

LII  Legal
Information
Institute



# N.Y. Comp. Codes R. & Regs. Tit. 12 § 142-2.17 - Split shift

State Regulations    Compare

A *split shift* is a schedule of daily hours in which the working hours required or permitted are not consecutive. No meal period of one hour or less shall be considered an interruption of consecutive hours.

# New York And The "Spread Of Hours" Law

New York adopted the so-called "Spread of Hours" law in 2013, which says that any hourly employee whose workday takes place over more than 10 hours is entitled to an extra hour's pay. The 10 hours includes any off-duty time, meal breaks and time between shifts.

For example, say you get to your job at 8 a.m. and work until noon. Your next shift doesn't start until 4 p.m., and then you work until 8 p.m. The "spread" of your workday is 12 hours, 8 a.m. to 8 p.m. Under the law, you should receive payment for 9 hours of work, even though you only worked for 8 hours.

Another example: Your first shift starts at 9 a.m. and goes until 1 p.m. You take a one-hour lunch break and then work your second shift from 2 p.m. until 6 p.m. Because your workday takes place over 9 hours in this case — 9 a.m. to 6 p.m. — you wouldn't receive spread-of-hours pay.

# Exhibit B

Time

powered by
*ADP*

# Time

**TIMECARD**      **SCHEDULE**

## Your Timecard

<u>SEP 14 - SEP 27</u>    —

Your Manager approved on SEP 30, 2019

**TOTAL TIME**



82.38
HRS

**WEEK SUMMARY**

**Week 1**
SEP 14 - SEP 20                                    **41.63 HRS**

**Week 2**
SEP 21 - SEP 27                                    **40.75 HRS**

**PAY CODE SUMMARY**

HOURS

Regular                                            82.38 HRS
Overtime                                           2.38 HRS

Hide/Show Schedule

| SAT | SUN | MON | TUE | WED | THU | FRI |
|-----|-----|-----|-----|-----|-----|-----|

https://my.adp.com/static/redbox/4.3.42/

10/1/2019

| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|
| 8.88 HRS | 7.52 HRS | 8.18 HRS | 8.20 HRS | 6.90 HRS | | 1.95 HRS |
| 12:00 AM | 12:00 AM | 12:00 AM | 12:00 AM | 12:00 AM | | 10:03 PM |
| - 5:53 AM | - 6:03 AM | - 6:11 AM | - 6:12 AM | - 6:54 AM | | - 12:00 AM |
| 9:00 PM | 10:32 PM | 10:00 PM | 10:00 PM | | | |
| - 12:00 AM | - 12:00 AM | - 12:00 AM | - 12:00 AM | | | |

| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
|---|---|---|---|---|---|---|
| 8.08 HRS | 8.12 HRS | 8.20 HRS | 8.05 HRS | 6.30 HRS | | 2.00 HRS |
| 12:00 AM | 12:00 AM | 12:00 AM | 12:00 AM | 12:00 AM | | 10:00 PM |
| - 6:05 AM | - 6:17 AM | - 6:15 AM | - 6:20 AM | - 6:18 AM | | - 12:00 AM |
| 10:00 PM | 10:10 PM | 10:03 PM | 10:17 PM | | | |
| - 12:00 AM | - 12:00 AM | - 12:00 AM | - 12:00 AM | | | |

Typical Schedule of workdays during
work weeks

√ - Split shift's / Spread of hours



## Cornell Law School



Legal
Information
Institute



# N.Y. Comp. Codes R. & Regs. Tit. 12 § 142-2.17 - Split shift

State Regulations     Compare

A *split shift* is a schedule of daily hours in which the working hours required or permitted are not consecutive. No meal period of one hour or less shall be considered an interruption of consecutive hours.

## New York And The "Spread Of Hours" Law

New York adopted the so-called "Spread of Hours" law in 2013, which says that any hourly employee whose workday takes place over more than 10 hours is entitled to an extra hour's pay. The 10 hours includes any off-duty time, meal breaks and time between shifts.

For example, say you get to your job at 8 a.m. and work until noon. Your next shift doesn't start until 4 p.m., and then you work until 8 p.m. The "spread" of your workday is 12 hours, 8 a.m. to 8 p.m. Under the law, you should receive payment for 9 hours of work, even though you only worked for 8 hours.

Another example: Your first shift starts at 9 a.m. and goes until 1 p.m. You take a one-hour lunch break, and then work your second shift from 2 p.m. until 6 p.m. Because your workday takes place over 9 hours in this case — 9 a.m. to 6 p.m. — you wouldn't receive spread-of-hours pay.

CO  EMPLID  DEPT  CLOCK  VCHR. NO.
TWF  3137H  000727  00727  0000113037

**24 FITNESS**

010-0310

24 HOUR FITNESS USA, INC
12647 ALCOSTA BLVD SUITE 500
SAN RAMON, CA 94583 888-439-6924

## Earnings Statement

**ADP**

| | |
|---|---|
| Period Beginning: | 02/16/2019 |
| Period Ending: | 03/01/2019 |
| Pay Date: | 03/08/2019 |

Taxable Marital Status:   Single
Exemptions/Allowances:
  Federal:        0,$25 Additional Tax
  NY:             1

RHONDA  HUDSON
909  THIRD  AVENUE  #7912
NEW YORK NY 10150

| Earnings | rate | hr/unit | this period | year to date |
|---|---|---|---|---|
| Regular | 15.0000 | 80.07 | 1,201.05 | 5,661.30 |
| OT Premium | 7.5000 | .08 | 0.60 | 14.01 |
| Holiday Prem | | | | 32.00 |
| Sick | | | | 82.20 |
| Vacation | | | | 840.00 |
| **Gross Pay** | | | **$1,201.65** | 6,629.51 |

Your federal taxable wages this period are
$1,053.36

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Sick Time | 14.63 | |
| Vacation Time | 153.18 | |
| Total Work Hrs | 80.07 | |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -126.39 | 706.51 |
| | Social Security Tax | -65.31 | 365.06 |
| | Medicare Tax | -15.28 | 85.38 |
| | NY State Income Tax | -34.62 | 211.26 |
| | NY SUI/SDI Tax | -1.20 | 6.00 |
| | NY Paid Family Leave Ins | -1.84 | 10.16 |
| | **Other** | | |
| | Hlpng Hnd Fndtn | -2.00 | 10.00 |
| | Hyatt Legal | -10.45 | 52.25 |
| | Pretax Dental | -4.22* | 21.10 |
| | Pretax Ghp Hlth | -80.87* | 404.35 |
| | Pretax Vision | -0.70* | 3.50 |
| | Transit Pretax | -62.50* | 312.50 |
| | **Net Pay** | **$796.27** | |
| | Checking | -796.27 | |
| | **Net Check** | **$0.00** | |

\* Excluded from federal taxable wages

© 2000 ADP, LLC

**24 FITNESS**

24 HOUR FITNESS USA, INC
12647 ALCOSTA BLVD SUITE 500
SAN RAMON, CA 94583 888-439-6924

Advice number:     00000113037
Pay date:          03/08/2019

Deposited  to the account of
RHONDA  HUDSON

| | account number | transit ABA | amount |
|---|---|---|---|
| | xxxxxxxxx1297 | xxxx  xxxx | $796.27 |

THIS IS NOT A CHECK

**NON-NEGOTIABLE**

Note to financial institutions: This electronic representation of Rhonda Hudson's paycheck was provided from 24 Hour Fitness USA, Inc.'s Payroll WorkCenter system on 1/4/2019.

 **FITNESS**

01/15/16                    D2647227

1265 Laurel Tree Lane Ste 200
Carlsbad CA 92011-

**ADVICE OF DEPOSIT**

RHONDA HUDSON
909 THIRD AVENUE #7912
NEW YORK, NY 10150

**NON-NEGOTIABLE**

| Employee RHONDA HUDSON | Id 03137H | Social Security | Status US-S NY-S | Exemptions / Allowances US-1/0 NY-1/0 | Number D2647227 |
|---|---|---|---|---|---|

| Code 24HOUR4 | Paygroup 1 | | | Division 21 | Department 00727 | Hire Date 07/10/08 | Period Start 12/26/15 | Period End 01/08/16 | Pay Date 01/15/16 |
|---|---|---|---|---|---|---|---|---|---|

| Earnings | Rate | Hours | Units | Dollars | Ytd Dollars | Paid Time Off | | Balance |
|---|---|---|---|---|---|---|---|---|
| Regular Pay | 13.26 | 80.93 | | 1,073.13 | 1,073.13 | Floating Holiday | | |
| Bonus - Holiday Pay | | | | 16.00 | 16.00 | City Sick Plan | | 40.00 |
| OT Recalc Weekly | | | | 0.14 | 0.14 | Sick | | 1.87 |
| Overtime Premium .5 | 6.63 | 0.93 | | 6.17 | 6.17 | Vacation | | 141.89 |
| Total | | | | 1,095.44 | 1,095.44 | | | |

| Taxes | Dollars | Ytd Dollars | Direct Deposit Accounts Checking - | | Net Amount 773.13 |
|---|---|---|---|---|---|
| Federal Income Tax | 100.72 | 100.72 | | | |
| Social Security (FICA) | 63.36 | 63.36 | Hours Worked | Current | Year To Date |
| Federal Medicare | 14.82 | 14.82 | Regular Time | 80.93 | 80.93 |
| New York Income Tax | 33.40 | 33.40 | Total | 80.93 | 80.93 |
| New York Disability | 1.20 | 1.20 | | | |
| New York City Resident | 22.09 | 22.09 | | | |
| Total | 235.59 | 235.59 | | Dollars | Ytd Dollars |
| | | | W2 Gross | 1,021.90 | 1,021.90 |

| Pre-tax Deductions | Dollars | Ytd Dollars |
|---|---|---|
| Pre-Tax GHP Health | 73.54 | 73.54 |
| Total | 73.54 | 73.54 |

| After-tax Deductions | Dollars | Ytd Dollars |
|---|---|---|
| Hyatt Legal | 11.18 | 11.18 |
| Helping Hands Foundation | 2.00 | 2.00 |
| Total | 13.18 | 13.18 |

| Net Pay | 773.13 | 773.13 |
|---|---|---|

24 Hour Fitness USA, Inc. - 1265 Laurel Tree Lane Ste 200 Carlsbad, CA 92011 - (888) 439-6924

 **National Account Services**
Outsourcing for HR, Benefits and Payroll



**24 HOUR FITNESS USA, INC**
12847 ALCOSTA BLVD SUITE 500
SAN RAMON, CA 94583 888-439-8924

## Earnings Statement

**ADP**

Period Beginning    08/17/2019
Period Ending       08/30/2019
Pay Date            09/06/2019

Taxable Marital Status:  Single
Exemptions/Allowances:
  Federal      0,825 Additional Tax
  NY:          1

RHONDA HUDSON
909 THIRD AVENUE #7912
NEW YORK NY 10150

| Earnings | rate | hours/unit | this period | year to date |
|---|---|---|---|---|
| Regular | 15.5000 | 73.84 | 1,144.53 | 20,460.77 |
| OT Premium | 7.7500 | .90 | 6.98 | 226.56 |
| Vacation | 15.5000 | 8.00 | 124.00 | 1,704.00 |
| Holiday Prem | | | | 48.00 |
| Sick | | | | 322.20 |
| Splitshift Prm | | | | 80.00 |
| **Gross Pay** | | | **$1,275.51** | 22,841.53 |

**\* Excluded from federal taxable wages**

Your federal taxable wages this period are
$1,124.72

| Deductions | Statutory | this period | year to date |
|---|---|---|---|
| | Federal Income Tax | -134.96 | |
| | Social Security Tax | -59.74 | 2,471.03 |
| | Medicare Tax | -16.31 | 1,266.84 |
| | NY State Income Tax | -38.83 | 294.36 |
| | NY SUI/SDI Tax | -1.20 | 697.03 |
| | NY Paid Family Leave Ins | -1.95 | 22.22 |
| | | | 34.96 |
| | **Other** | | |
| | Hlpng Hnd Fndtn | -2.00 | 36.00 |
| | Hyatt Legal | -10.45 | 177.55 |
| | Pretax Dental | -4.22* | 71.74 |
| | Pretax Ghp Hlth | -80.87* | 1,374.79 |
| | Pretax Vision | -0.70* | 11.90 |
| | Transit Pretax | -65.00* | 1,082.50 |
| | Aed Certfcatn | | 85.00 |
| | **Net Pay** | **$849.28** | |
| | Checking | -849.28 | |
| | **Net Check** | **$0.00** | |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Sick Time | 24.00 | |
| Vacation Time | | 178.38 |
| Total Work Hrs | 73.84 | |

**24 HOUR FITNESS USA, INC**
12847 ALCOSTA BLVD SUITE 500
SAN RAMON, CA 94583 888-439-8924

Advice number:    00000376762
Pay date          09/06/2019

Deposited to the account of
RHONDA HUDSON

| | account number | transit ABA | amount |
|---|---|---|---|
| | xxxxxxxxx1297 | xxxx xxxx | $849.28 |

THIS IS NOT A CHECK

**NON-NEGOTIABLE**

# Exhibit C

08/30/23

Hello,

My name is Jack Willis and I worked for 24hr Fitness Madison Sq Park from 2009-2018(?). During that time, I was a personal trainer for 2 years and the Fitness Manager the remaining time. Before I even started Rhonda was the overnight employee. As any employer knows it is hard to find a reliable person to even show up consistently but to do a good job. Because of this, Rhonda was literally the only overnight person for several years. She was one of maybe 3 overnight people throughout my time. I would see her occasionally when I left but almost every day when I got to work in the morning. The fact that this is debatable is silly. She was also the Night Service representative. From what I would guess the overnight hours were something around 915/930pm to 6/7am. Please let me know how I can be of any further assistance.

All the best,
Jack Willis
7Y7-576-3223

STATE OF NY COUNTY OF QUEENS
SUBSCRIBED AND SWORN BEFORE ME
THIS  30  DAY OF  Aug  ,  2023

NOTARY PUBLIC

Thomas G. Mai
Notary Public - State of New York
No. 01ME8222532
Qualified in Queens County
My Commission Expires September 07 2026

**AFFIDAVIT**

I, Dare Matthews, of Tarrant County, Texas, swear that I use to live in NYC at which time I worked out at 24 Hr. Fitness in the Flatiron District on a nightly basis from 2009 through 2014.   Rhonda Hudson was a regular employee at this location on a full-time basis for the night shift.   I interacted with Rhonda on a regular basis.  I considered Rhonda my friend and mother figure during the whole 2009-2014.  I was a young eighteen year-old starting college and really treasured my nightly chats with Rhonda during these young years.

I confirm Rhonda Hudson was a devoted full-time employee of 24 Hour Fitness during the timeframe that I worked out every night while living in Chelsea.


Dare Matthews is:

 being duly sworn, deposes and affirm upon oath:


**State of Texas**                          SUBSCRIBED TO AND SWORN BEFORE ME, THIS

**County of Tarrant**                     _____ Day of ___Aug_____ 2023

SIGNATURE                                                          Dare Matthews

Seal

NOTARY PUBLIC

CLAY ARWINE
NOTARY PUBLIC
STATE OF TEXAS
ID # 10061222
My Comm. Expires 12-02-2023

**AFFIDAVIT**

I, Cynthia Matthews, of Tarrant County, Texas, swear that my daughter, Dare Matthews, moved to NYC as a young 18 year old in 2009 reaching for a dream. She was determined to get a college education and continue her body fitness regimen. She rarely missed a single night in fulfilling her workout at 24 Hr. Fitness which was located just a few blocks from her Chelsea apartment. She worked out nightly 2009-2014 at which time she can confirm Rhonda Hudson was a full-time night shift employee at this gym.

Rhonda Hudson became Dare's main friend that she looked forward seeing on a nightly basis. I joined Dare at 24 Hr. Fitness on numerous occasions to be able to visit with Rhonda and then walk with Dare to her apartment.   Rhonda was always dependably at 24 Hr Fitness on a regular nighttime shift each and every time I walked into the facility.

Dare and I are more than willing to give this information under oath and travel back to NYC to testify on behalf of knowing Rhonda was devoted to 24 Hr Fitness as a full-time night shift team member.

Cynthia Matthews is:

 being duly sworn, deposes and affirm upon oath:

**State of Texas**

**County of Tarrant**

SUBSCRIBED TO AND SWORN BEFORE ME, THIS

_28_ Day of _Aug_  2023

_Cynthia Matthews_

Cynthia Matthews

SIGNATURE

Seal

NOTARY PUBLIC

CLAY ARWINE
NOTARY PUBLIC
STATE OF TEXAS
ID # 10001222
My Comm. Expires 12-02-2023

**Rhonda**
Service Representative Night



**Rhonda**
Service Expert Night

# Exhibit D

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re:

RS FIT NW LLC,

Reorganized Debtor.[1]

Chapter 11

Case No. 20-11568 (KBO)

## DECLARATION OF KATIE HEALON IN
## SUPPORT OF REORGANIZED COMPANY'S (I) RESPONSE
## TO MOTION FOR SUMMARY JUDGMENT AND (II) OBJECTION TO
## PROOFS OF CLAIM NOS. 9404, 24973, AND 27128 FILED BY RHONDA HUDSON

Katie Healon makes this Declaration pursuant to 28 U.S.C. § 1746:

1.     I am the Senior Director of Treasury and Pay Process of 24 Hour Fitness USA,

LLC, the successor to Debtor 24 Hour Fitness USA, Inc (the "Debtor").

2.     I submit this declaration (the "Declaration") in support of the *Reorganized*

*Company's (I) Response to Motion for Summary Judgment and (II) Objection to Proofs of Claim*

*Nos. 9404, 24973, and 27128 Filed by Rhonda Hudson* (the "Objection") in response to the *Motion*

*for Summary Judgment* [RS FIT Docket No. 781] (the "Motion") filed by Rhonda Hudson (the

"Claimant").[2]

3.     All statements in this Declaration are based upon my personal knowledge, my

review (or the review of others under my supervision) of (a) business books and records kept by

---

[1]     The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, as applicable, is RS FIT NW LLC (9372). By order dated March 16, 2021 [RS FIT Docket No. 7], the remaining debtor affiliates' (the "Reorganized Debtors") chapter 11 cases were closed. The Reorganized Debtors' corporate headquarters and service address is 24 Hour Fitness USA, Inc., 1265 Laurel Tree Lane, Carlsbad, CA 92011.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

the Debtors and the Reorganized Company in the ordinary course of business, and (b) the Motion and the Hudson Claims.

4.      From July 10, 2008 through June 11, 2020, Claimant was employed by the Debtor as a service representative at one of the Debtor's fitness clubs located in New York City (the "Club"). During most of her tenure, Claimant worked an overnight shift from 10:00 p.m. to 6:00 a.m. In Claimant's role as a service representative, Claimant worked at the front desk of the Club where she facilitated the check-in process at the Club and responded to service-related issues.

5.      Pursuant to the Debtor's compensation policies, service representatives were not entitled to earn commissions on the sale of Club memberships (the "Sales Commissions"). Sales Commissions could only be earned by employees whose responsibilities included driving the sales of the Debtor's Club's memberships with specific targeted sales goals and metrics. Claimant was not entitled to Sales Commissions under the Debtor's compensation policy as a service representative because selling Club memberships was not one of her responsibilities as a service representative. In addition, the Debtor's Sales Commissions policy during most of the Claimant's employment required a minimum threshold hours and sales that needed to be fulfilled in order to become entitled to Sales Commissions. Given Claimant's role as a service representative, Claimant could not have satisfied any of the threshold requirements even if Claimant was entitled to Sales Commissions (which Claimant is not).

6.      The Debtor's internal split shift policy provided that an employee was entitled to split shift pay under one of following two (or both) situations. First, if an employee's shift in one workday was split with a break in between that was equal to or greater than 61 minutes, an

2

employee was entitled to split shift pay. Second, if an employee's shift in a workday was split and the total "spread of hours" of a single shift was more than 10 hours, an employee was entitled to split shift pay. Claimant did not qualify for split shift pay under either of the situations. Claimant's shift did not include a break that was equal to or longer than 61 minutes and Claimant's total "spread of hours" was less than 10 hours. Claimant's spread of hours was 8 hours since her shift was from 10:00 p.m. to 6:00 a.m.

7.     The Debtor also maintained an internal compensation policy for employees when one or more of its fitness clubs closed due to a disaster (the "Disaster Pay Policy"), such as a snowstorm, and employees were unable to fulfill their hours. The Debtor's Disaster Pay Policy provided that employees were entitled to compensation if one or more clubs closed for an "extended period of time" due to such disaster. Historically, the Debtor defined "extended period" as a period greater than or equal to two days. If a fitness club was closed for a single day due to a disaster, employees that lost their shifts would not be qualified for compensation under the Disaster Pay Policy. To the extent that the basis of Claimant's request for Disaster Pay Policy was the closure of the Club for a single day on January 23, 2016, Claimant was not entitled to compensation under the Disaster Pay Policy for that date.

3

8.    Based on the foregoing, and to the best of my knowledge, information and belief,

the information contained in the Objection is true and accurate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge and belief.

Dated:  August 21, 2023
        Carlsbad, California

By:    */s/ Katie Healon*
       Katie Healon
       Senior Director of Treasury and Pay Process
       24 Hour Fitness USA, LLC

4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:

RS FIT NW LLC,

Reorganized Debtor.[1]

Chapter 11

Case No. 20-11568 (KBO)

**Re: Docket No. 781**

## REORGANIZED COMPANY'S (I) RESPONSE TO
## MOTION FOR SUMMARY JUDGMENT AND (II) OBJECTION TO
## PROOFS OF CLAIM NOS. 9404, 24973, AND 27128 FILED BY RHONDA HUDSON

The above-captioned reorganized debtor in this chapter 11 case (the "Reorganized

Debtor")[2] and All Day Holdings LLC (together with the Reorganized Debtor, the "Reorganized

Company") respectfully submit this reply and objection (this "Objection") to the *Motion for*

*Summary Judgment* [RS FIT Docket No. 781][3] (the "Motion") filed by Rhonda Hudson (the

"Claimant"). In support of this Objection, the Reorganized Company seeks entry of the proposed

form of order attached hereto as **Exhibit A**, respectfully submits the *Declaration of Katie Healon*

*in Support of Reorganized Company's (I) Response to Motion for Summary Judgment and*

*(II) Objection to Proofs of Claim Nos. 9404, 24973, and 27128 Filed by Rhonda Hudson* (the

"Healon Declaration"), attached hereto as **Exhibit B**, and states as follows:

---

[1]  The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal
tax identification number, as applicable, is RS FIT NW LLC (9372). By order dated March 16, 2021 [RS FIT
Docket No. 7], the remaining debtor affiliates' (the "Reorganized Debtors") chapter 11 cases were closed. The
Reorganized Debtors' corporate headquarters and service address is 24 Hour Fitness USA, Inc., 1265 Laurel Tree
Lane, Carlsbad, CA 92011.

[2]  Capitalized terms used but not defined herein shall have the meanings set forth in the confirmed *First Amended
Joint Chapter 11 Plan of 24 Hour Fitness Worldwide, Inc. and Its Affiliated Debtors* [24 Hour Fitness Docket
No. 1508, Ex. A] (the "Plan"), attached as Exhibit A to the *Order (I) Confirming First Amended Joint Chapter
11 Plan of Reorganization of 24 Hour Fitness Worldwide, Inc. and Its Affiliated Debtors and (II) Granting
Related Relief* [24 Hour Fitness Docket No. 1508] (the "Confirmation Order").

[3]  Docket numbers refer to 24 Hour Fitness Worldwide, Inc. (20-11558 (KBO)) ("24 Hour Fitness") and RS FIT
NW LLC (20-11568 (KBO)) ("RS FIT").

**BACKGROUND**

1.        From July 10, 2008 to June 11, 2020, Rhonda Hudson (the "Claimant") worked as an employee at a fitness club located in New York City (the "Club"), owned and operated by 24 Hour Fitness USA, Inc. (the "Debtor" and together with its affiliated debtors in possession, the "Debtors").

2.        On June 15, 2020 (the "Petition Date"), the Debtors commenced voluntary cases under title 11 of the United States Code (the "Bankruptcy Code") with the United State Bankruptcy Court for the District of Delaware (the "Court") and were authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of title 11 of the Bankruptcy Code.

3.        On August 24, 2020, the Court entered the *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim by Governmental Units, (III) Establishing a Bar Date to File Requests For Payment of Postpetition Administrative Claims, (IV) Establishing an Amended Schedules Bar Date, (V) Establishing a Rejection Damages Bar Date, (VI) Approving the Form and Manner for Filing Proofs of Claim, (VII) Approving the Proposed Notice of Bar Dates, (VIII) Approving Procedures with Respect to Service of the Proposed Notice of Bar Dates, and (IX) Granting Related Relief* [24 Hour Fitness Docket No. 785] (the "Bar Date Order") which, among other things, established October 2, 2020 at 5:00 p.m. (prevailing Eastern Time), as the deadline to file proofs of claim for persons or entities, not including Governmental Units as defined in 101(27) of the Bankruptcy Code (the "General Bar Date"). In accordance with the Bar Date Order, the Debtors caused notice of the General Bar Date

2

and proof of claim forms to be served on, among others, the Debtors' known creditors and other known parties in interest as of the Petition Date. (*See Notice of Deadlines to File Proofs of Claim and Requests for Payment of Administrative Claims* [24 Hour Fitness Docket No. 839].)

4.　　On August 28, 2020, Claimant filed Proof of Claim No. 9404 asserting (i) a General Unsecured Claim in the amount of $265,881.52, and (ii) a Priority Non-Tax Claim in the amount of $13,650.00, for an aggregate amount of $279,531.52, on account of alleged accrued but unpaid split shift pay throughout the course of Claimant's employment with the Debtor (the "Split Shift Claim").

5.　　On October 1, 2020, Claimant filed Proof of Claim No. 24973 asserting (i) a General Unsecured Claim in the amount of $283,728.96, and (ii) a Priority Non-Tax Claim in the amount of $13,650.00, for an aggregate amount of $297,378.96, on account of alleged accrued but unpaid commission from sales of the Club's membership throughout the course of Claimant's employment with the Debtor and alleged unpaid compensation for the January 23, 2016 workday when the Club was closed due to a snowstorm (the "Sales Commission Claim").

6.　　On December 14, 2020, after the General Bar Date, Claimant filed Proof of Claim No. 27128 that asserts a General Unsecured Claim in the amount of $8,000,000.00 on account of damages for alleged discrimination based on sex, sexual orientation, race, and age (the "Discrimination Claim" and, together with the Split Shift Claim and the Sales Commission Claim, the "Hudson Claims").

7.　　On December 30, 2020, all conditions precedent to consummation of the Plan of Reorganization of the Debtors (the "Plan") were either satisfied or waived in accordance with

3

Article IX of the Plan, such that the Plan became effective on December 29, 2020, and as a result, the Plan has been substantially consummated, as that term is defined by section 1101(2) of the Bankruptcy Code. (*See Notice of Effective Date, and Entry of Order (I) Confirming First Amended Joint Chapter 11 Plan of Reorganization of 24 Hour Fitness Worldwide, Inc. and its Affiliated Debtors and (II) Granting Related Relief* [24 Hour Fitness Docket No. 1551] ("Notice of the Effective Date").)[4]

8.      Since the Effective Date, and prior to the Claimant filing the Motion, the Reorganized Company and its advisors worked with the Claimant to address and consensually resolve the Hudson Claims.   Unfortunately, these efforts have been unsuccessful, but the Reorganized Company will continue to seek to resolve this matter if at all reasonably possible.

9.      On August 7, 2023, Claimant filed the Motion asserting that the Debtor displayed (i) false pretenses, false representations, or actual fraud; (ii) fraud while acting in a fiduciary capacity; and (iii) willful malicious injury (collectively, the "Summary Judgment Claims"), and requesting full payment of the Hudson Claims.

## RESPONSE

## I.   THE MOTION FOR SUMMARY JUDGMENT IS PROCEDURALLY IMPROPER

10.      In a bankruptcy case, summary judgment is only proper in an adversary proceeding under Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[4]   Pursuant to the Purchase Transaction (as defined in the Plan), Debtors 24 Hours Holdings II LLC, 24 Hour Worldwide Inc., and 24 Hour Fitness United States, Inc. were dissolved after the Effective Date. (*See* Plan, Ex. B.)

matter of law." Fed. R. Bankr. P. 7056; *Official Comm. Of Unsecured Creditors of Champion Enters. v. Credit Suisse (In re Champion Enters.)*, 2011 Bankr. LEXIS 3607, at \*13–14 (Bankr. D. Del. Sept. 27, 2011) (stating that summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure is "made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056").

11.     Claimant has not commenced an adversary proceeding with respect to the Summary Judgment Claims. Claimant has not filed a complaint, no discovery has taken place, and no facts have been developed. Nor were the Summary Judgment Claims raised in the Hudson Proofs of Claims. In the absence of any of the foregoing, the Motion is procedurally improper. Moreover, prior to the filing of this Objection, there was no contested matter with respect to the Hudson Claims. *See* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."). Accordingly, there is no procedural basis for Claimant to move forward with the Motion.

## II.     THE MOTION PRESENTS NO FACTS IN SUPPORT OF THE SUMMARY JUDGMENT CLAIMS

12.     To the extent the Court treats the Motion as opening a contested matter pursuant to Bankruptcy Rule 9014, the Motion fails to proffer any evidence in support of the Summary Judgment Claims and must be denied.

### A.     False Pretenses

13.     Without providing any underlying facts in support and only through baseless assertions unsupported by any evidence, Claimant asserts the Debtor has displayed false pretenses. Under New York law, false pretenses standing alone is not a crime nor a civil cause of action but

5

"an evidentiary allegation of the means used to commit the crime." *See, e.g., People v. Farrugia*, 41 A.D.2d 894, 894 (N.Y. App. Div. 1973) (citing N.Y. Penal Law § 155.45 for larceny). More importantly, this Court does not have subject matter jurisdiction over criminal matters. *See* 28 U.S.C. § 1334(b) ("Except as provided in subsection (e)(2) . . . the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."); *Arenas v. Inslee (In re Arenas)*, Adv. No. 19-01134, 2021 WL 5412681, at \*4 (B.A.P. 9th Cir. Nov. 19, 2021) (unpublished decision) (holding that bankruptcy courts lack jurisdiction over criminal matters).

## B.  False Representation, Fraud While Acting in Fiduciary Duty, and Actual Fraud

14.  Claimant's assertion that the Debtor undertook a false representation and fraud while acting in fiduciary capacity is similarly unsupported by any evidence.  First, false representation, standing alone, is not a cause of action under New York law. *Passiglia v. Northwell Health, Inc.*, 252 F. Supp. 3d 129, 139 (E.D.N.Y. 2017) ("Critically, a false representation does not, without more, give rise to a right of action, either at law or in equity, in favor of the person to whom it is addressed.") (quoting *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (2017)).  Second, with respect to a claim for fraud while acting in a fiduciary duty, employers generally do not owe any fiduciary duties to their employees. *Hyman v. Int'l Bus. Machs. Corp.*, 2000 U.S. Dist. LEXIS 15136, at \*11 (S.D.N.Y. Oct. 17, 2000) (dismissing a claim for negligent misrepresentation brought by an employee against the employer because employers do not employees a fiduciary duties); *see also Reid v. Temple Univ. Hosp. Episcopal Campus*, 2017 U.S.

Dist. LEXIS 183814, at *15 (E.D. Pa. Nov. 6, 2017) ("An employer generally does not owe fiduciary duties to its employees.").

15.     To the extent Claimant intends to assert common law fraud under New York law against the Debtor for declining to pay the Claimant on account of the Hudson Claims, the Claimant must show: (i) the Debtor's misrepresentation (or omission) of material fact, (ii) made for the purpose of inducing the other party to rely on it; (iii) justifiable reliance by the other; and (iv) a resulting injury. *See Giraffe G4 Sys., LLC v. Measurement, Ltd.*, 2018 U.S. Dist. LEXIS 62946, at *11–12 (S.D.N.Y. Apr. 13, 2018) (stating the elements for common law fraud under New York law). None of these elements are satisfied as Claimant fails to offer any factual record to support this claim. Claimant does not identify Debtor's misrepresentation let alone her reliance on such misrepresentation. As set forth in the Healon Declaration, Claimant was not entitled to receive split shift premiums nor commission for sales of the Club's membership. S*ee* Healon Declaration ¶¶ 5–6.

## C.     Willful and Malicious Injury

16.     Under New York law, "willful and malicious injury" is not a cause of action for which relief can be granted. Section 523(a)(6) of the Bankruptcy Code does provide "willful and malicious injury by the debtor to another entity or to the property of another entity" as a basis for an exception to discharge and courts addressing section 523(a)(6) have described willful and malicious injury as akin to that of an intentional tort, which generally requires an intent to cause the injury, not simply the act itself. 11 U.S.C. § 523(a)(6); *see Kawaauhau v, Geiger*, 523 U.S. 57, 61 (1998) ("§ 523(a)(6)'s formulation triggers in the lawyer's mind the category of 'intentional

torts,' which generally require that the actor intend the *consequences* of an act, not simply the act itself."); *Webber v. Giarratano (In re Giarratano)*, 299 B.R. 328, 334 (Bankr. D. Del. 2003) (stating that "willful and malicious" actions within Section 523(a)(6) refer to "actions [which] were substantially certain to result in injury or where the debtor desired to cause injury"). Exceptions to discharge are "strictly construed against creditors" and the moving party has the burden to prove the elements of discharge by a "preponderance of evidence." *Id.*

17.     As set forth above, Claimant does not offer any evidence that the Debtor desired and intended to cause injury to Claimant.  Furthermore, in accordance with local law and the Debtor's internal policies, and as set forth in the Healon Declaration, Claimant was not entitled to split shift premiums and the Claimant was not entitled to commissions arising from sales of the Club's membership. *See* Healon Declaration ¶¶ 5–6.

## OBJECTION

## I. THE HUDSON CLAIMS ARE UNENFORCEABLE AND MUST BE DISALLOWED UNDER SECTION 502(B)(1) OF THE BANKRUPTCY CODE

18.     The Reorganized Company objects to the allowance of the Hudson Claims.  Under Section 502(b)(1) of the Bankruptcy Code, a claim must be disallowed if it is unenforceable against a debtor and property of the debtor under any agreement or applicable law. 11 U.S.C. § 502(b)(1). Claimant has not provided any evidence in support of the Hudson Claims and the Reorganized Company's books and records support that Claimant does not have any enforceable claims against the Debtor or its property.

## A. Split Shift Claim

19.     Under New York law, an employee is entitled to receive one additional hour of pay at the minimum wage "for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is split shift; or (c) both situations occur." *See Zhong v. Zijun Mo*, 2012 U.S. Dist. LEXIS 99966, at *16 (E.D.N.Y. July 18, 2012) (quoting N.Y. Comp. Codes R. & Regs tit. 12, §142-2.4). "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday" and includes "working time plus time off for meals plus intervals off duty." N.Y. Comp. Codes R. & Regs tit. 12, §142.2.18. "Split shift" is defined as "a schedule of daily hours in which the working hours required or permitted are not consecutive. No meal period of one hour or less shall be considered an interruption of consecutive hours." *Id.* §142.2.17.

20.     Claimant did not qualify for additional wages under the definition of "spread of hours" because Claimant's spread of hours in one workday did not exceed ten hours. *See* Healon Declaration ¶ 6. Claimant's work schedule was between 10:00 p.m. to 6:00 a.m. for a total of eight hours. *See id.* Claimant also does not qualify for additional wages under the definition of "split shift" because her working hours were consecutive and did not contain any interruption (e.g., meal period) of more than one hour. *Id.*

21.     The Debtor's split shift pay policy was in line with the local New York law and Claimant was treated in accordance with the Debtor's policy. *See* N.Y. Comp. Codes R. & Regs tit. 12, §142.2.4, 17, 18 (defining eligibility for additional pay under spread of hours and split shift). Therefore, the Split Shift Claim must be disallowed and expunged in its entirety.

9

**B.      Sales Commission Claim**

22.      Pursuant to the Debtor's internal compensation policy, Claimant was not entitled to earn commission for sales of the Club's membership. *See* Healon Declaration ¶ 5. Commission on sales of the Club's memberships could only be earned by employees that served in positions responsible for driving sales of the Club's membership with targeted sales goals and metrics. *See id.* Minimum thresholds with respect to working hours and sales numbers were also required to be satisfied before an employee in a commissionable role was eligible to accrue commission. *See id.* Claimant, in her role as a service representative, was not responsible for driving the sale of the Club's membership and was not eligible for any threshold target sales goals or metrics to achieve. *See id.*

23.      Claimant's responsibilities as a service representative included working at the front desk of the Club to facilitate the check-in process at the Club and to respond to any service-related issues. *See id.* ¶ 4. While Claimant may have received minimal training to assist customers with enrolling for the Club's membership, Claimant did not serve in a commissionable role during her employment with the Debtor. *See id.* ¶ 5. Even if Claimant was entitled commission as a service representative (which Claimant is not), Claimant could not have satisfied the minimum sales threshold given her role as a service representative. *See id.*

24.      Additionally, Claimant's assertion of unpaid compensation within the Sales Commission Claim for a lost workday due to a snowstorm is also unsupported by the evidence. Pursuant to the Debtor's disaster pay policy, an employee is entitled to the lost day of wages only if the Club closes for a duration of more than one day. *See id.* ¶ 7. Claimant states in the Sales Commission Claim that she missed a single day of work on January 23, 2016. Accordingly,

10

Claimant is not entitled to wages under the disaster pay policy and the Sales Commission Claim is therefore unenforceable and must be disallowed and expunged in its entirety.

### C. Discrimination Claim

25.     The Discrimination Claim was filed after the General Bar Date and therefore must be disallowed. *See* Bar Date Order at ¶ 2; *see also In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 46 (Bankr. D. Del. 2012) (explaining that bar date is a "drop-dead date" for creditors who receive the required notice); *In re Exide Techs.*, 601 B.R. 271, 293 (Bankr. D. Del. 2019) (explaining the importance of adhering to a bar date in the administration of a bankruptcy case). Nor can Claimant argue that she did not receive timely notice, as she timely filed the Split Shift Claim and the Sales Commission Claim. (*See also Affidavit of Service*, Ex. F [24 Hour Fitness Docket No. 861] (listing the Claimant as a party that received notice of the General Bar Date and a copy of the Proof of Claim form).)

26.     Even if the General Bar Date did not disallow the Discrimination Claim (and it does), Claimant provides no evidence to support that the alleged discrimination occurred. Claimant writes in support of her Discrimination Claim that she was denied commission for sales of the Club's membership and split shift wages, which were both motivated by discriminatory reasons. It was not. As set forth above, Claimant was not denied sales commission; rather, Claimant was never entitled to a sales commission. Further, Claimant was not entitled to split shift wages pursuant to local laws and internal policies of the Debtor, which were formulated in compliance with local laws. *See* Healon Declaration ¶ 6.

11

27.     Claimant provides no other evidence of mistreatment or discrimination other than by identifying personal characteristics and stating that she worked with other employees that did not share the same characteristics. *See* Discrimination Claim. These assertions are not evidence supporting the Discrimination Claim. *See Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) (holding that bringing a discrimination claim under Title VII of the Civil Rights Act of 1964 requires the plaintiff to first establish a prima facie case of discrimination showing that (i) plaintiff is a member of a protected class, (ii) plaintiff was qualified for the position she held, (iii) plaintiff suffered an adverse employment action, and (iv) the adverse action took place under circumstances giving rise to the inference of discrimination). Nor does the screenshot of a Google search stating an unverified number of employment cases have been filed against the Debtor, attached as an exhibit to the Discrimination Claim, provide any evidence in support of the Discrimination Claim. The Discrimination Claim is nothing more than a conclusory assertion and must be disallowed and expunged in its entirety.

## **RESERVATION OF RIGHTS**

28.     The Reorganized Company reserves the right to amend, modify or supplement this Objection and to file additional objections to the Motion or to the Hudson Claims.

12

## CONCLUSION

29.    WHEREFORE, the Reorganized Company respectfully requests that the Court

sustain this Objection and enter an order denying the Motion and disallowing and expunging, in

their entirety, the Hudson Claims.

Dated: August 21, 2023
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

-and-

**ROPES & GRAY LLP**
Ryan Preston Dahl (admitted *pro hac vice*)
Eric M. Sherman (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 596-9000
Facsimile:  (212) 596-9090

*Attorneys for the Reorganized Company*

13

Rhonda Hudson
909 Third Ave # 7912
New York, N.Y. 10150





CERTIFIED MAIL

9589 0710 5270 1154 9068 94

Retail

RDC 99

USBC District of Delaware
824 Market Street
Wilmington D.E. 19801